Nathan J. Arnold, WSBA No. 45356
R. Bruce Johnston, WSBA No. 4646
Arnold & Jacobowitz, PLLC
2701 First Avenue, Suite 200
Seattle, WA 98121
(206) 799-4221, Fax (206) 866-3234
nathan@CAJlawyers.com

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

8
9

| | |
|---|---|
| Firefighters MICHAEL BACON, ANDREA KERNKAMP, JOE HOWARTH, BRENNAN COOKE, TIM WHEELER, TOM HARVEY, JOEL BROSE, TANNER TOWNSEND, CURTIS SMITH, ISAIAH DEAN, NICHOLAS HOLMES, MATTHEW NORTON, JHAR FULLER, STEVEN HOWIE, JEFFREY BAXTER, ARIC PISA, DUANE WILCOX, DAVID HEIZER, JAMES BILLMAN, MARLIN THORMAN, JASON WEBSTER, TIMOTHY ARCHER, COREY BARKER, SCOTT MCCANN, and CONNOR FOXWORTH | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
|            Plaintiffs, | ) ) |
| v. | ) ) ) |
| NADINE WOODWARD, the Mayor of the City of Spokane, Fire Chief BRIAN SCHAEFFER, and the CITY OF SPOKANE. | ) ) ) ) ) |
|            Defendants. | ) |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**CASE NO. 2:21-cv-00296**

**PLAINTIFFS' MOTION FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER, A PRELIMINARY AND/OR FINAL INJUNCTION PURSUANT TO CR 65(a)(2)**

**10/__/2021**

*Oral argument requested for preliminary or final injunction only*

**JURY DEMANDED**

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

## INTRODUCTION

"But, even in a pandemic, the Constitution cannot be put away and forgotten." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66, 208 L. Ed. 2d 206 (2020). Plaintiffs are Spokane Firefighters who will be terminated and lose their benefits on October 18, 2021 over medical and religious objection to novel vaccination. If it were not for the politics of our time, this would be a lay-down Civil Rights and wrongful termination case.

COVID-19 is a serious threat. But crisis will always be with us. Those seeking medical accommodations should not ignore their actual physicians. And despite the apparent wishes of the Mayor and the Fire Chief, religion is as protected in Spokane as it is in Spokane Valley. Arbitrarily, the City's actions fail to account for natural immunity, those who work in near isolation already, and the true cost of its actions. The City's choices, in addition to offending the Constitution of the United States, offends logic and will be counterproductive to its purported purpose.

## STATEMENT OF FACTS

Despite the City Council having lifted her State of Emergency months ago, the Mayor and Fire Chief now require all City Firefighter be vaccinated, with purported exemptions. But employees whose exemption are approved have found that means nothing where the City refuses reasonable accommodations.

The bases for religious exemptions need not be discussed where the City has categorically accepted them as sincere. But, by way of example:

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

> Since the birth of my son on July 22, 2020 my sincere pro-life religious beliefs have been strongly reaffirmed. I believe in human life upon conception (Psalm 139:13-16). This belief prohibits me from participation or benefiting from an abortion at any gestational age, as I believe it is murder (Exodus 20:13).

Declaration of Firefighter Isiah Dean ("Dean Dec."); *see*, *also*, Declaration of Matthew Norton ¶ 4.

Firefighter Andrea Kernkamp, a thirty-two-year fire service veteran, has an aneurysm and heart disease. Declaration of Andrea Kernkamp ¶¶ 3&4. She fears death if she takes the vaccine. Firefighter McCann has a rare bleeding disorder, hereditary hemorrhagic telangiectasia, and his doctor has advised against the vaccine. Declaration of Scott McCann ¶ 4. Firefighters Kernkamp and McCann's fears are not ill-founded. Firefighter Barker has had an adverse reaction to the shot. Declaration of Corey Barker ("Barker Dec.") ¶¶ 9-16. Even he is being forced to take the second shot or lose his job. *Id.*

Battalion Chief Michael Bacon is the longest serving officer in the Spokane Fire Departments' 137-year history. Declaration of Michael Bacon ("Bacon Dec.") ¶ 3. His duties are primarily administrative at this point in his career. *Id.* ¶ 6. Without citing any evidence, the City claims the Battalion Chief is a threat to the City he has faithfully served for decades, even though his administrative role requires no accommodation. *Id.* ¶ 7. In practice, he is only a perceived threat because of his sincerely held religious beliefs. Spokane will not be safer with these Firefighters

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

working in the community in other jobs; mutual aid departments and contractors, <u>with less vaccinate restrictions</u>, will simply have to pickup the slack. Kernkamp Dec. ¶ 9; Fuller Dec. ¶ 6; Howie Dec. ¶¶ 6-9; Bacon Dec. ¶ 9.

Expert physicians share similar concerns. "The Washington State Mandate as a direct cause has exacerbated the problems," including a critical shortage of nurses and cleaning staff. Himmel Dec. ¶¶ 4–7 *Id.* ¶¶ 4–5 (at Arnold Dec. Exh. 23). The Mandate disregards established practices and other options for reasonable accommodations. Andersen Dec. ¶¶ 5–14 (at Arnold Dec. Exh. 22). The City could simply extend hospitals' existing flu shot protocols to the Fire Department. *Id.* ¶ 14–16. Instead, the government is effectively practicing medicine without a license, and doing so badly. *Id.* ¶ 17.

The Fire Marshal for the State of Washington, an expert in public safety, confirms the public risk. Fire code compliance and firefighter training will wane. Declaration of Charles LeBlanc ¶ 8 (at Arnold Dec. Exh. 24). The same will be true for medical services. *Id.* ¶ 9. Bluntly, the City's actions do not serve the legitimate state interest in fighting COVID-19. Indeed, the City will merely have to lean harder on its surrounding departments for aid, who are not as stringently requiring vaccination. Barker Dec. ¶¶ 26-28; Declaration of Jhereme Fuller ¶¶ 5-6.

The Mayor and Fire Chief's thinly veiled assault on religious beliefs has other discriminatory impacts. As early as February 10, 2021, the Washington State

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

Department of Health knew protected classes were vaccinating at lower rates. Arnold. Dec. Exh. 50. The City is, or should be, aware of this data. For example, Hispanic citizens make up 13.2% of the total population of Washington State but were vaccinating at a rate of only 4.7%. *Id*. And in late April: "Hispanics are underrepresented in the vaccinated population in nearly all counties, compared to their percent of the county's population. Similarly, non-Hispanic blacks are underrepresented in almost all counties." Arnold Dec. Exh. 51. This, necessarily, means that the City's inflexible approach to medical and religious accommodations will have a disparate impact upon this protected class. This disparate impact is being seen in practice elsewhere. Contine Dec., Warner Dec., George Dec. Lopez Dec., Bailey Dec., Santos Dec., Killeen Dec (Arnold Dec. Exhs. 39, 10, 72, 73, 74, 77 & 78). Although these Plaintiffs do not bring such claims, this reality cuts hard against any public policy argument the City might make.

The Plaintiffs have offered to work dispatch. Declaration of Steven Ezra Howie ¶ 5. The Plaintiffs have offered to pay for their own PPE and testing. *See*, *e.g.*, Kernkamp Dec. ¶¶ 7-8; Declaration of Matthew Norton ¶¶ 6-8. Neighboring Fire Departments, and EMS contractors, <u>operating in Spokane</u>, have allowed for religious accommodations, even without these offers. Kernkamp Dec. ¶ 9, Howie Dec. ¶ 8-9; Declaration of Tanner Townsend ("Townsend Dec.") ¶¶ 5-7. Spokane can too.

The Mayor and the Fire Chief have also failed to take into account the latest

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

scientific information available to them, long-settled issues of informed consent, and whether or not their purported compelling interest will actually be accomplished (it will not). Declarations of Dr. Luxton, Lieutenant Colonel Long, M.D., Dr. Malone, Dr. Wei Lin, Dr. Luxton, Dr. Carver, Dr. Jackson, Dr. McCullough (attached to the Declaration of Nathan J. Arnold, filed herewith).

At *Loudermill*, the City could not cite a single case where a Firefighter passed COVID-19 to a patient. Nor have they, apparently, done a true financial analysis of the relative cost of losing these Firefighters contrasted to the same accommodations offered across the street in Spokane Valley. *See, e.g.*, Townsend Dec. ¶¶ 5-8; Declaration of Marlin Thorman ¶ 9, and Arnold Dec. Exh. 104.

The City also must rebut the evidence that more Battalion Chiefs have taken time off as a result of adverse reactions than those who have not taken the shot. The City must also rebut the evidence that have been more COVID-19 "break-through" cases for the vaccinated than the unvaccinated. Thorman Dec. ¶ 8.

Because of these glaring omissions, purposeful or not, and even though strict scrutiny *is* the test, they cannot pass even a rational basis analysis.

### ARGUMENT AND AUTHORITY
For injunctive relief, Plaintiffs must show a likelihood of success, that denying them relief would lead to irreparable injury, and that granting relief would not harm the public interest. *Diocese of Brooklyn* at 66, *infra*. The Ninth Circuit has "articulated

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

an alternate formulation … under which serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks and citation omitted)).; *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("a stronger showing of one element may offset a weaker showing of another."). The Ninth Circuit has consistently "recognized the significant public interest in upholding First Amendment principles." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) (quoting *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002)). Since the Firefights have raised serious First Amendment questions, the law requires a finding that the balance of hardships tips sharply in their favor. *See*, *e.g.*, *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019); *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007); *Blais v. Hunter*, 493 F. Supp. 3d 984, 994 (E.D. Wash. 2020).

The First and Fourteenth Amendments to the United States Constitution secure to each person the right against State interference in the free exercise of religion. Congress has protected that right in the Religious Freedoms Restoration Act (RFRA):

> Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

PLAINTIFFS' MOTION FOR DECLARATORY AND INJUNCTIVE RELIEF- 7

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

(b) Exception Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—
(1) is in furtherance of a compelling governmental interest; and
(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1.

There can be no question that the City's decision has, and will continue to, cause irreparable harm to these rights. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Diocese of Brooklyn* at 67 (citing *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion)).

The Ninth Circuit has upheld preliminary injunctions where the harm was "(1) the loss of the chance to engage in normal life activity, *i.e.*, pursuing [plaintiff's] chosen profession, and (2) professional stigma." *Enyart v. Nat'l Conf. of Bar Examiners, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011). And "the loss of one's job does not carry merely monetary consequences; it carries emotional damages and stress, which cannot be compensated by mere back payment of wages." *Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 882 (9th Cir. 2008), *rev'd on other grounds*, 562 U.S. 134, 131 S.Ct. 746, 178 L.Ed.2d 667 (2011). The harms a person suffers when denied a job on the basis of a disability are "emotional and psychological—and immediate." *Equal Emp. Opportunity Comm'n v. BNSF Ry. Co.*, 902 F.3d 916, 928–29 (9th Cir. 2018), *as amended* (Sept. 12, 2018) (quoting *Chalk v.*

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

*U.S. Dist. Court Cent. Dist. of Cal.*, 840 F.2d 701, 710 (9th Cir. 1988)).  And "we are satisfied that these harms constitute irreparable injury [and that] no legal remedy can fully right the wrong of such a dignitary affront." *Id.*

<u>Public Interest</u>

Even if the City can disprove the discriminatory intent, it cannot show that public health would be imperiled if less restrictive measures were taken.  Nor even that they will achieve their purported compelling purpose in any event. Experts agree with Plaintiffs' contentions. *See*, *e.g.*, Declarations of the above cited M.D.'s and PhD's. And Plaintiffs have put forth competent evidence from experts that the City's actions itself will have a negative impact on the public interest through the loss of emergency and non-emergency services personnel and result in <u>more COVID-19 infections</u>. All of this could be avoided less restrictively: let these vital employees do, for a bit longer, exactly what they have: masking-up, testing, being naturally immune, and/or working in isolation.

The City will undoubtedly rely upon *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25 S. Ct. 358, 49 L. Ed. 643 (1905). *Jacobson* is highly distinguishable. Vaccination was authorized in Massachusetts by a specific statute, not Mayoral fiat or the Fire Marshal's desires, and the Court held that "the police power of a State must be held to embrace, at least, such reasonable regulations *established directly by legislative enactment* as will protect the public health." *Id.* at

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

24–25. Moreover, the vaccine at issue in that case was considerably more well-tested (John and Abigail Adams corresponded about smallpox vaccination a century earlier) (it also did not utilize fetal cell lines); the mortality rate of smallpox was multiple orders of magnitude greater than COVID-19; and the penalty for opting out was a five-dollar fine[1]—not termination and loss of pension. The City cannot ignore Constitutional rights, especially in the face of the preemptive power exercised by the 'General Government' in RFRA.

The media darling, *Klaassen v. Trustees of Indiana Univ*., is equally distinguishable. No. 1:21-CV-238 DRL, 2021 WL 3073926 (N.D. Ind. July 18, 2021). Unlike in Washington State, the Indiana legislature <u>has</u> acted on vaccine mandates and allowed its universities to make their own local decision. The university did that. The university also provided reasonable accommodations. Indeed, if the Plaintiffs were subject to vaccination because <u>the legislature in Olympia</u>, after the appropriate processes, required by law, *and* reasonable <u>accommodations</u>, not lip-service exemption approvals, were included, this would be a much different dispute; likely no dispute at all.

*Johnson v. City of San Francisco* does not apply either. No. C 09-05503 JSW, 2010 WL 3078635 (N.D. Cal. Aug. 5, 2010). *Johnson* involved a disgruntled

---

[1] Adjusted for inflation, less than five hundred and fifty dollars ($550).

ARNOLD & JACOBOWITZ PLLC
2701 First Avenue, Suite 200
Seattle, WA 98121
113 East Woodin Avenue, Suite 200
Chelan, WA 98816 (not a service address)

firefighter passed over for promotion, not someone terminated absent medical and/or religious accommodation.

Last, but certainly not least, it is always in the public interest to prevent the violation of a party's constitutional rights. *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 383, 99 S.Ct. 2898, 2907, 61 L.Ed.2d 608 (1979).

<u>Least Restrictive Means</u>

Stemming the spread of COVID-19 is unquestionably a compelling interest, but the Mayor and Fire Chief's decision to blindly follow Governor Inslee's mandate is not "narrowly tailored." - or tailored at all, even if effective. *Diocese of Brooklyn* at 67. Without being able to point to any evidence, the Mayor and Fire Chief apparently assume that unvaccinated Firefighters contribute to the spread of COVID-19; but long before vaccines became available, the City had instituted masking and distancing rules well calculated to reduce such a contribution. Nor does the City seem to have considered why termination would be preferable to other policies of the sort already in use. Termination **cannot** prevent the (former) employee from spreading the virus but continuing to work intelligently and/or with PPE **would**.

The Plaintiff Firefighters aren't simply going to disappear on the 19th. They will just be forced to look for work elsewhere. Same human, same "threat" - one less EMT in the middle of a pandemic. Worse still, their role will have to be filled by the surrounding Fire Departments through mutual aid. And, every single Fire Department

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

surrounding the City, including those with joint aid agreements, and the City's private ambulance contractors, are granting exemptions. The only conclusion to the City's draconian treatment is that there will be <u>more</u> unvaccinated EMS workers while the now-former Firefighters will simply be out in public nonetheless.

The least restrictive means have also not been used to determine religious sincerity either. The invasive questionnaires have a further chilling effect, the result has been additional individuals with sincerely held religious beliefs being removed from the Fire Department.

Due Process

Public employees have due process rights in connection with adverse employment actions. Under *Cleveland Bd. of Educ. v. Loudermill*, State employees have a "procedural due process right to individualized determination at administrative level regarding" whether they are "disqualified" from employment. 470 U.S. 532, 544, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), *and see, Fields v. Dep't of Early Learning*, 193 Wash. 2d 36, 434 P.3d 999 (2019). City firefighters are afforded special protection under Washington Law. RCW 41.08.080. The City has not, refuses to, and cannot articulate any basis to so terminate these Firefighters. "Not being vaccinated" is not on the list. *Id.* Regardless, exhaustion is not a prerequisite to an action under § 1983. *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 500–01, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

The City also cannot articulate a basis to ignore natural immunity, which the latest science indicates is superior to vaccination. For those with natural antibodies there is no undue hardship where all parties can merely carry on. Ironically, of course, some of those with natural immunity only have it because they caught the virus while serving their City. Declaration of Duane Wilcox ("Wilcox Dec.") ¶ 4. Of course, they then brought it home to their families; the same families now facing eviction. And due process is required where action would "as a practical matter drive a wageearning family to the wall." *Sniadach v. Fam. Fin. Corp. of Bay View*, 395 U.S. 337, 341–42, 89 S. Ct. 1820, 1823, 23 L. Ed. 2d 349 (1969). *See*, *e.g.*, Dean Dec. ¶ 16.

The City has also failed to consider the undue hardship, and public risk, caused by the *lack* of firefighters and the inevitable financial impact of paying significant additional overtime and training new firefighters, if available. Wilcox Dec. ¶ 10; Townsend Dec. ¶ 8.

Cities are also not subordinate to the Governor in emergency management and cannot simply hide behind his mandate. The word "local" occurs 122 times in The Emergency Management Act for a reason. RCW 38.52. So, too, in the Pandemic Influenza Preparedness Act. "An effective response to pandemic influenza in Washington must focus at the <u>local level</u>." RCW 70.26.010(5) (emphasis added). It is no defense for the City to say "the Governor made us" – worse still, so long as that is the City's position, the Plaintiffs can <u>never</u> receive Due Process of law.

PLAINTIFFS' MOTION FOR DECLARATORY
AND INJUNCTIVE RELIEF- 13

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

The Fire Chief got it right the first time, on December 16, 2020: "the department is not able to require employees to get the vaccine as a condition of employment, but they will continue to wear PPE and practice social distancing."

The Fire Chief's newfound attempt to purge religion from his ranks also flies in the face of RCW 38.52.120: "No organization for emergency management established under the authority of this chapter shall participate in any form of political activity, nor shall it be employed directly or indirectly for political purposes;" as well as the WA. St. Constitution "No religious qualification shall be required for any public office or employment." Art. I, Sec. XXI.

<u>Title VII</u>

Title VII of the Civil Rights Act of 1964 78 Stat. 253, as amended, prohibits two categories of employment practices. It is unlawful for an employer discriminate because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). A Title VII plaintiff establishes a *prima facie* claim by showing that the employer "uses a particular employment practice that causes a disparate impact" on one of the bases. § 2000e–2(k). *Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 130 S. Ct. 2191, 2194, 176 L. Ed. 2d 967 (2010). Here the impact is clear: the removal of all individuals with a sincere religious belief from public service, with the medically vulnerable, but still willing to sacrifice and serve, as collateral damage.

Although non-binding, a recent Sixth Circuit ruling is squarely on point. *Dahl*

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

*v. Bd. of Trustees of W. Michigan Univ.*, No. 21-2945, 2021 WL 4618519 (6th Cir. Oct. 7, 2021). Student athletes, like the Firefighters here, were granted exemptions to a vaccine mandate, but no accommodations were given; injunctive relief issued.

Free Exercise Clause

The Free Exercise Clause, like the Establishment Clause, extends beyond facial discrimination. As recently cited with approval in *Brooklyn Diocese*: the Clause "forbids subtle departures from neutrality" (*Gillette v. United States*, 401 U.S. 437, 452, 91 S.Ct. 828, 837, 28 L.Ed.2d 168 (1971)), and "covert suppression of particular religious beliefs" (*Bowen v. Roy, supra,* 476 U.S., at 703, 106 S.Ct., at 2154 (opinion of Burger, C.J.)). Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality; the Free Exercise Clause protects against governmental hostility which is masked; "The Court must survey meticulously the circumstances of governmental categories to eliminate, as it were, religious gerrymanders." *Walz v. Tax Comm'n of New York City,* 397 U.S. 664, 696, 90 S.Ct. 1409, 1425, 25 L.Ed.2d 697 (1970) (Harlan, J., concurring).

How a law works in practice supplies "strong evidence of its object." *Blais* at 994 (, *citing Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 546, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). *See also*, *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) (the free

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

exercise clause protects against laws that "penalize religious activity by denying any person an equal share of the rights, benefits, and privileges enjoyed by other citizens"); *United States v. Ballard*, 322 U.S. 78, 86–88, 64 S.Ct. 882, 88 L.Ed. 1148 (1944). The Firefighters' "'religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.'" *Lukumi*, 508 U.S. at 531, 113 S.Ct. 2217 (*quoting Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981)). Yet, to be eligible to continue their employment, the Department requires the Firefighters to divorce themselves from their religious beliefs. See *Espinoza v. Montana Dep't of Revenue*, –– U.S. ––––, 140 S. Ct. 2246, 2255–56, 207 L.Ed.2d 679 (2020). "Placing such a condition on benefits or privileges 'inevitably deters or discourages the exercise of First Amendment rights.'" *Id.*

 *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and its progeny *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), and *Hobbie v. Unemp. Appeals Comm'n of Fla.*, 480 U.S. 136, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987), held incidental burdens on the free exercise of religion must be narrowly tailored to achieve a compelling state interest. *Smith* ostensibly restricted the scope of this line of cases by delimiting the use of strict scrutiny to a few categories of cases, including when the government has a discretionary system of "individualized ... assessment." 494 U.S. at 873, 110 S.Ct.

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

1595. Strict scrutiny thus applies whenever the government, as here, denies a request for religious accommodation under "circumstances in which individualized exemptions from a general requirement are available." *Lukumi*, 508 U.S. at 537, 113 S.Ct. 2217. When applicable rules give state actors "unfettered discretion" unrestricted by "particularized, objective criteria," courts apply strict scrutiny. See *Stormans*, 794 F.3d at 1081–82.

"The Free Exercise Clause 'protect[s] religious observers against unequal treatment' and subjects to the strictest scrutiny laws that target the religious for 'special disabilities' based on their 'religious status.' " *Trinity Lutheran Church of Columbia, Inc. v. Comer*, —— U.S. ——, 137 S. Ct. 2012, 2019, 198 L.Ed.2d 551 (2017) (quoting *Lukumi*, 508 U.S. at 533, 113 S.Ct. 2217); see also *Smith*, 494 U.S. at 877, 110 S.Ct. 1595 (the free exercise clause protects against the government's imposition of "special disabilities on the basis of religious views or religious status").

The Supreme Court "has repeatedly confirmed that denying a generally available benefit solely on account of religious identity imposes a penalty on the free exercise of religion that can be justified only by a state interest 'of the highest order.'" *Trinity Lutheran* at 2019. *Trinity Lutheran* reaffirms that the government may not impose special disability or withhold government benefits because of one's religion.

Like the policy at issue in *Trinity Lutheran*, City's policy at issue here puts the Firefighters to a choice: They may continue serving their city, but only if they disavow

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

their religious beliefs. *See Id*. at 2021–22. This is religious gerrymandering. "A law failing to satisfy these requirements must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *See Lukumi*, 508 U.S. at 531–32, 113 S.Ct. 2217. Still, "[t]he state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state interest." *Thomas*, 450 U.S. at 718, 101 S.Ct. 1425. "The least-restrictive-means standard is exceptionally demanding," *see Burwell v. Hobby Lobby Stores, Inc*., 573 U.S. 682, 728, 134 S.Ct. 2751, 189 L.Ed.2d 675 (2014).

Recently, in *Brooklyn Diocese*, the Supreme Court enjoined the Governor of New York's emergency restrictions on religious services. Justice Gorsuch's concurrence is instructive here. "Government is not free to disregard the First Amendment in times of crisis. At a minimum, that Amendment prohibits government officials from treating religious exercises worse than comparable secular activities, unless they are pursuing a compelling interest and using the least restrictive means available." *Diocese of Brooklyn* at 69 (J. Gorsuch, concurring), *citing*, *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546, 113 S.Ct. 2217 (1993).

By Governor's Cuomo's executive fiat "the State has effectively sought to ban all traditional forms of worship in affected 'zones' whenever the Governor decrees and for as long as he chooses." *Id.* at 72. Here, all those with sincerely held beliefs are effectively banned from the Spokane Fire Department. Courts "may not shelter in

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

place when the Constitution is under attack. Things never go well when we do …while the pandemic poses many grave challenges, there is no world in which the Constitution tolerates … executive edicts that" allow religious gerrymandering. *Id.*

## Contracts Clause

The City, in addition to breaching their contracts with the Plaintiffs further violates Art. I, Sec. 10, by unilaterally inserting a new term into every Firefighter's contract: vaccination. Something the Chief admitted to the media he could not do.

## Privacy, Bodily Autonomy, and Battery

All Plaintiffs have a right to body autonomy. At common law, even the touching of one person by another without consent and without legal justification was a battery. *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 269, 110 S. Ct. 2841, 2846, 111 L. Ed. 2d 224 (1990). "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pacific R. Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891). "The logical corollary of the doctrine of informed consent is that the patient generally possesses the right not to consent, that is, to refuse treatment." *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 270, 110 S. Ct. 2841, 2847, 111 L. Ed. 2d 224 (1990) This right, too, has been infringed by the Mayor and her subordinates.

Under Washington State law, all Plaintiffs are in immediate risk of a battery

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

under economic duress. The State Supreme Court in *Kumar v. Gate Gourmet Inc.* reversed the trial court's dismissal of, among other claims, battery where an employer discriminated against its workers for failure to provide meals the conformed to their religious beliefs - the Court further held was a battery under economic duress. 180 Wash. 2d 481, 486, 325 P.3d 193, 195 (2014). If failing to provide non-Halal food can be a battery, then requiring unwanted injection certainly is. *Kumar* of course, too, supports Plaintiffs Free Exercise claims. Mr. Barker *has been* battered by the City; the rest of the Plaintiffs should not be.

Americans with Disabilities Act

Under the ADA, absent undue hardship, employers must make a reasonable accommodation for a qualified employee with a disability (29 C.F.R. §1630.9(a); Reasonable accommodation may include, among other things, appropriate adjustment or modifications of employer policies (for example, exemption from a mandatory vaccination policy) (29 C.F.R. § 1630.2(o)(2)). Here, Firefighters who have life threatening risks, Mr. McCann, Mr. Barker, and Mrs. Kernkamp, should not be forced to risk their lives or lose their job, they should be accommodated. These Firefighters are not afraid to die for the public's sake – these "heroes of the pandemic" run into burning buildings – after decades of doing so, they should not now be punished for fear of <u>unnecessary</u> death.

## **CONCLUSION**

Plaintiffs respectfully request that this Court declare the City's actions

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

unconstitutional and void. Plaintiffs further request that a Temporary Restraining Order issue.[2] Plaintiff's further respectfully request that a hearing be expeditiously held for a preliminary injunction accelerated to a full trial on the merits pursuant to FRCP 65(a)(2).

DATED this 14th day of October 2021

**ARNOLD & JACOBOWITZ PLLC**

/s/Nathan J. Arnold
Nathan J. Arnold, WSBA No. 45356
2701 First Ave., Ste. 200
Seattle, WA 98121
(206) 799-4221
Nathan@CAJLawyers.com
*Counsel for Plaintiffs*

---

[2]A bond is not required in this matter for several, independent, reasons. This is a federal civil rights case, an injunction will actually protect the public's interest in State services, a TRO or preliminary injunction presents no monetary risk to the Governor or his subordinates (indeed it prevents massive financial liability of the City and the cost of hiring new firefighters and paying OT), an injunction would protect the court's jurisdiction over the subject matter, and this Court has discretion to dispense with the requirement in any event.

PLAINTIFFS' MOTION FOR DECLARATORY
AND INJUNCTIVE RELIEF- 21

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)

# CERTIFICATE OF SERVICE

Nathan J. Arnold declares under penalty of perjury.

1.  I am counsel for Plaintiffs in the above captioned matter.

2.  On October 13, 2021, I informed the City's counsel, Mrs. Elizabeth Kennar, at several Loudermill hearings that this lawsuit and a TRO are forthcoming; I confirmed the same via email on October 13, 2021 at 4:31pm.

3.  My office will electronically transmit the foregoing, and supporting materials, once filing is complete, and dispatch a hardcopy to counsel.

    EXECUTED under penalty of perjury this 14th day of October 2021 at Edmonds, WA.

/s/Nathan J. Arnold
Nathan J. Arnold, WSBA No. 45356

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
113 EAST WOODIN AVENUE, SUITE 200
CHELAN, WA 98816 (NOT A SERVICE ADDRESS)