J. Chad Mitchell, WSBA #39689
Jesse L. Taylor, WSBA #51603
Vanessa Williams-Hall, WSBA #54308
Molly Gibbons, WSBA #58357
Monica Romero, WSBA # 58376
Hathaway Burden, WSBA #52970
Summit Law Group, PLLC
315 Fifth Avenue S., Suite 1000
Seattle, WA  98104-2682
(206) 676-7000
*chadm@summitlaw.com*
*jesset@summitlaw.com*
*vanessaw@summitlaw.com*
*mollyg@summitlaw.com*
*hathawayb@summitlaw.com*
*monicar@summitlaw.com*

The Hon. Thomas O. Rice

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

MICHAEL BACON, et al.,

Plaintiffs,

v.

NADINE WOODWARD, et al.,

Defendants,

CASE NO. 2:21-cv-00296 TOR

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

## I.     INTRODUCTION

To protect the health and safety of employees and the community during the pandemic, the Governor's Proclamation required healthcare workers to be vaccinated against COVID-19 unless entitled to medical or religious accommodations under antidiscrimination statutes. Consistent with this mandate, Defendant City of Spokane (the "City") required its employees to be vaccinated or obtain an exemption and accommodation. While the City did not control its contractors' accommodation decisions, it nevertheless required them to certify compliance with the Proclamation, implement additional safety requirements, and limit the use of unvaccinated responders wherever possible.

The City's measures reflect a uniform and generally applicable implementation of the Proclamation that advanced its public health objectives and satisfies rational basis review. Even under strict scrutiny, summary judgment should be denied because genuine issues of material fact exist as to whether the City's implementation of the Proclamation was narrowly tailored to serve the compelling state interest of protecting the health and safety of City employees. Accordingly, Defendants Woodward, Shaeffer, and the City respectfully request that the Court deny Plaintiff's' Motion for Partial Summary Judgment ("MPSJ").

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 1
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

## II. EVIDENCE RELIED UPON

Defendants rely on the Declarations of Brian Schaeffer, Tom Williams, Nadine Woodward, Lonnie Rash, Dr. John Lynch, and J. Chad Mitchell, and the exhibits thereto; and the pleadings and papers on file with the Court.

## III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party will have the burden of proof on an issue at trial, it must "come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). The moving party must support their assertions by citing specific admissible evidence, including depositions, documents, or declarations. Fed. R. Civ. P. 56(c)(1)(A), (c)(4).

If the moving party fails to meet its burden, summary judgment must be denied. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970). Otherwise, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 2
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

(1986). The nonmoving party meets its burden if "the claimed factual dispute [is] shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). The nonmovant's evidence is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, it is a "heavy burden" for a plaintiff to seek summary judgment. *Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 538 (9th Cir. 2018).

## IV.    ARGUMENT

### A.    The Law of The Case Doctrine Does Not Apply.

As a preliminary matter, Plaintiffs' Motion is predicated on their conclusory assertion that it is the "law of the case" that strict scrutiny applies. MPSJ, p.12. But the Ninth Circuit reversed this Court's dismissal of Plaintiffs' Free Exercise claim **on the pleadings** after determining that Plaintiffs "plausibly pled" that the City's implementation of the vaccination requirement was not generally applicable. *Bacon v. Woodward*, 104 F.4th 744, 751-52 (9th Cir. 2024). Plaintiffs cannot rely on the pleadings on summary judgment; the Court must also consider Defendants' evidence in opposition.

"Under the law of the case doctrine, a decision of a legal issue or issues by an appellate court…must be followed in all subsequent proceedings in the same case…unless the evidence on a subsequent trial was substantially different…"

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 3
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Pubali Bank v. City Nat. Bank*, 777 F.2d 1340, 1342 (9th Cir. 1985) (internal quotations omitted). "When, as in this case, the plaintiff moves on remand for summary judgment, the trial judge may decide the motion in accordance with the law of the case, based on the appellate conclusions, *if no evidence that affects the appellate ruling is offered in opposition to the summary judgment*." *Id.* (emphasis added). The "trial court cannot grant the motion solely in reliance on the appellate holdings; it must examine whatever materials the defendant presents in opposition to the summary judgment. If that material produces no new evidence and evinces no factual dispute, the resolution of which might change the law applied by the appellate court, the trial court should enter judgment for the plaintiff as a matter of law." *Id.* (internal citation omitted). Indeed, even where the Ninth Circuit has reversed a district court's decision granting *summary judgment*, the "law of the case" doctrine does not prevent the district court from considering and granting a *new* motion for summary judgment based on evidence not previously considered by the district or appellate courts. *Mortimer v. Baca*, 594 F.3d 714, 720-21 (9th Cir. 2010).

Here, as demonstrated below, Defendants offer robust evidence concerning the City's implementation of the Proclamation. ***None*** of this evidence was considered by this Court or the Ninth Circuit when resolving Defendants' Rule 12(c) motion. *See* ECF No. 72, p.5 (Plaintiffs arguing that "[f]or purposes of the motion, the allegations of the non-moving party must be accepted as true, while the

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 4
CASE NO. 2:21-cv-00296 TOR

allegations of the moving party which have been denied are assumed to be false"). Defendants' evidence (1) introduces a genuine dispute of material fact as to whether Plaintiffs' religious beliefs were substantially burdened by the Proclamation, and (2) establishes that the City's implementation of the Proclamation was neutral and generally applicable, requiring analysis under the rational basis standard. It likewise introduces a genuine dispute of material fact as to whether, if strict scrutiny applies, the City's implementation of the Proclamation satisfied the standard. Because this evidence changes the law applied by the appellate court and the result reached, the law of the case doctrine does not apply.

**B.     Plaintiffs Are Not Entitled to Summary Judgment on Their Free Exercise Claim.**

**1.     Applicable Legal Standards**

The Free Exercise Clause of the First Amendment states that "Congress shall make no law…prohibiting the free exercise [of religion]." U.S. Const. amend. I. "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). The court must also determine whether the challenged law is neutral and generally applicable. *Stormans, Inc. v. Wiseman*, 794 F.3d 1064, 1075-76 (9th Cir. 2015). If a policy is both neutral and generally applicable, it is subject to rational basis review, *i.e.*, the government action

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 5 CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

must be "rationally related to a legitimate governmental purpose." *Id.* at 1084. If a policy is not neutral or generally applicable, it is subject to strict scrutiny, *i.e.*, the government action must be narrowly tailored to a compelling interest. *Id.* at 1076.

### 2. Plaintiffs Have Not Established a Substantial Burden on Sincerely Held Religious Beliefs.

To merit protection under the Free Exercise Clause, a claim must be "rooted in religious belief, not in 'purely secular' philosophical concerns," and that religious belief must be "sincerely held." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (quoting *Callahan v. Woods*, 658 F.2d 679, 683 (1981)). Although the Supreme Court has cautioned against second-guessing the reasonableness of an individual's religious beliefs, "[t]his principle does not mean that courts must take plaintiffs' conclusory assertions of violations of their religious beliefs at face value." *Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023). Plaintiffs' "assertions as to the sincerity of [their] religious beliefs are not entitled to deference on [their] own motion for summary judgment." *Victorino v. Hawaiian Airlines, Inc.*, 2024 WL 5108276, at *6 (D. Haw. Dec. 12, 2024) (citing *Bolden-Hardge*, 63 F.4th at 1223) ("Plaintiff must establish there are no disputes of fact as to the sincerity of her religious beliefs….").

Here, Plaintiffs do not set forth any evidence establishing that their objections to the vaccine requirement were religious in nature, were sincerely held, or were

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 6
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

substantially burdened by the City's implementation of the Governor's Proclamation. *E.g.*, MPSJ, p.7 ("Each Plaintiff held a sincere religious belief prohibiting receipt of the COVID-19 vaccines available during the relevant period." (citing nothing)); *id.*, p.10 (citing only allegations in the FAC).[1] Instead, Plaintiffs rely on the City's granting of their religious exemption requests to establish these elements, *see id.*, pp.13, 18-19 n.4, claiming that "sincerity" "is generally not in dispute once the government grants an exemption," *id.*, p.13 (citing *Shakur v. Schriro,* 514 F.3d 878, 884-85 (9th Cir. 2008)). However, the case cited by Plaintiffs does not stand for or support their assertion. *See Shakur*, 514 F.3d at 884-85 (addressing "whether a prisoner must objectively show that a central tenet of his faith is burdened by a prison regulation to raise a viable claim under the Free Exercise Clause").

---

[1] "At the summary judgment stage, Plaintiffs must present actual evidence in support of their claims and can no longer rely only on the allegations in the complaint." *McElroy v. Reno Police Sergeant Sifre*, 2025 WL 3145566, at *10 (D. Nev. July 31, 2025); *see also Schoene v. Christensen*, No. 24-2317, 2026 WL 120829, at *2 (9th Cir. Jan. 16, 2026) (same); *Lopez v. Pac. Mar. Ass'n*, 657 F.3d 762, 768 (9th Cir. 2011) (same); *Johnson v. Clark Cnty. Sheriff*, 2023 WL 5974853, at *2 (W.D. Wash. Sept. 14, 2023) (same).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 7
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Further, courts have repeatedly held that plaintiffs cannot establish the existence of sincerely held religious beliefs by relying on the fact that their employer granted their request for a religious exemption. *See, e.g.*, *Bartholomew v. Washington*, 725 F. Supp. 3d 1225, 1232 (W.D. Wash. 2024) ("Although DSHS ultimately found Bartholomew held a religious belief preventing him from complying with the vaccine requirement, that determination does not bind this Court's analysis."); *Fisher v. Dep't of Fin. Institutions*, 2025 WL 1434366, at *1 (W.D. Wash. May 19, 2025) (same); *Jarmon v. Bd. of Indus. Ins. Appeals*, 2025 WL 3268351, at *6 (W.D. Wash. Nov. 24, 2025) (same), *appeal docketed*, No. 25-8162 (9th Cir.); *Racz v. King Cnty.*, 2025 WL 2029151, at *2 (Wash. Ct. App. July 21, 2025), *review denied*, 583 P.3d 21 (2026) ("Lastly, it is not relevant that the County granted Racz an exemption but denied him an accommodation….Racz failed to establish a prima facie case because he did not establish a bona fide religious belief that conflicted with the vaccination requirement."); *Jackson v. King Cnty.*, 2025 WL 2022075, at *2 (W.D. Wash. July 18, 2025) ("Plaintiff suggests that defendants waived any challenge to the religious nature of her exemption request when it granted the request in 2021. Courts have generally rejected this type of estoppel argument, and plaintiff offers no reason why she should be relieved of the burden of establishing the existence of a bona fide religious belief." (citation omitted)); *Wittig v. Ferguson*, 2025 WL 3216350, at *5 (Wash. Ct. App. Nov. 18, 2025) ("Even if the

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 8
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

AGO granted Wittig's religious exemption request, that fact alone does not mean that granting Wittig's request was a binding litigation position such that the AGO should be estopped from arguing against the legitimacy of her request at the pleading stage.").

The other cases Plaintiffs cite, *see* MPSJ at 18, n.4, merely reiterate the point that courts "have cautioned against second-guessing the reasonableness of an individual's asserted religious beliefs," *Bolden-Hardge*, 63 F.4th at 1223. However, those cases do not stand for the proposition that courts are precluded from dismissing claims for lack of a sincerely held religious belief or from determining that a genuine dispute of material fact exists regarding the sincerely held religious belief element of a claim. To the contrary, courts repeatedly make such determinations. *Compare Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886, 896-97, 900 (9th Cir. 2025) (affirming dismissal of Title VII COVID accommodation claim based on belief that "their bodies are temples of the Holy Spirit," stating "it takes more than a generalized aversion to harming the body to nudge a practice over the line from medical to religious"), *with Eshom v. King Cnty.*, 2025 WL 3187479, at *6 (W.D. Wash. Nov. 14, 2025) (precluding summary judgment on issue of whether plaintiffs held bona fide religious beliefs because whether plaintiffs' "professed religious concerns were sincere or merely post-hoc rationalizations for secular concerns presents precisely the type of factual dispute that courts may not resolve on summary judgment"). Nor

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 9
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

do Plaintiffs cite any authority supporting the seemingly novel proposition that an employer is precluded from challenging the sincerely held religious belief element of a Free Exercise claim because such evidence allegedly violates Evidence Rule 404. MPSJ, p.19, n.4 (citing nothing); *cf. O'Hailpin v. Hawaiian Airlines, Inc.*, 2025 WL 1543951, at *4–5 (D. Haw. May 30, 2025) (holding that "plaintiffs must prove that their claims are actually based on religious beliefs" and "[t]he dispute about the sincerity of Plaintiffs' religious beliefs and the evaluation of the Plaintiffs' credibility are questions for the jury.").

Because Plaintiffs have failed to set forth any evidence[2] that the City's implementation of the Proclamation substantially burdened their sincerely held

---

[2] As evidenced by their deposition testimony, Plaintiffs' alleged religious beliefs appear to be far more secular in nature. *E.g.*, Declaration of J. Chad Mitchell ("Mitchell Decl."), Ex. A at 37:4-42:14, 45:2-47:20; *id.*, Ex. B at 43:1-47:25; *id.*, Ex. C at 29:1-31:18; *id.*, Ex. D at 56:1-57:7, 67:2-69:20; *id.*, Ex. E at 46:5-24, 54:3-57:24, 61:5-25; *id.*, Ex. F at 18:13-22:24, 27:24-28:19, 44:24-49:20; *id.*, Ex. G at 32:19-33:15, 37:3-39:12, 40:8-20; *Detwiler*, 156 F.4th at 897, 900 ("Detwiler's references to prayer and a broad belief that her body is a temple do not render her medical evaluation of the swabs religious."); *Eshom*, 2025 WL 3187479, at *6 (plaintiff's deposition testimony about taking medicine tested through fetal cell lines, emphasizing natural immunity, and largely relying on personal prayer as basis for objection "lend themselves to an inference that Plaintiffs' religious concerns are the type of 'scientific and political objections to

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 10
CASE NO. 2:21-cv-00296 TOR

Summit Law Group, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

religious beliefs, as opposed to their secular concerns, they are not entitled to summary judgment on their Free Exercise claim.[3]

### 3. The City's Implementation of the Governor's Vaccine Proclamation is Subject to, and Survives, Rational Basis Review.

"In assessing neutrality and general applicability, courts evaluate both 'the text of the challenged law as well as the effect…in its real operation.'" *Parents for Privacy v. Barr*, 949 F.3d 1210, 1234 (9th Cir. 2020) (quoting *Wiesman*, 794 F.3d at 1076). The "two tests for whether a law is neutral and generally applicable focus on whether a law specifically targets or singles out religion." *Id.* at 1234-35 (citing *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993)) ("[T]he protections of the Free Exercise Clause pertain if the law at issue

the vaccine'"). Where the moving party bears the burden of proof, summary judgment "is improper when specific facts are alleged that if proven would call the credibility of the moving party's witness into doubt, especially when the challenged testimony is an essential element of the plaintiff's case." *Cabral v. State Farm Fire & Cas. Co.*, 582 F. Supp. 3d 701, 708–09 (D. Ariz. 2022).

[3] Plaintiffs cannot attempt to remedy this deficiency on reply, as they are not permitted to introduce new evidence and arguments at that time. *E.g.*, *Ruiz v. Fernandez*, 949 F. Supp. 2d 1055, 1063 (E.D. Wash. 2013), *order clarified*, 2013 WL 12167930 (E.D. Wash. June 24, 2013).

discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons.").

### a. The City's Implementation of the Proclamation Was Neutral.

The Court has already determined that the City's application of the Proclamation was neutral. *See* ECF No. 78, p.7. The Court should reach the same conclusion on summary judgment.[4]

A law is not neutral if its "object … is to infringe upon or restrict practices *because of* their religious motivation." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1130 (9th Cir. 2009) (emphasis added) (quoting *Lukumi*, 508 U.S. at 533). A "law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Lukumi*, 508 U.S. at 533.

A law also fails the neutrality test if the record "compels the conclusion that suppression of [a religion or religious practice] was the object of the ordinances." *Id.* at 534. For example, in *Lukumi*, the "Supreme Court concluded that an animal

---

[4] On appeal, the Ninth Circuit did not decide whether the City's implementation of the Proclamation was neutral. *Bacon*, 104 F.4th at 751. But in its Memorandum Opinion, the Ninth Circuit held that the Proclamation is neutral (and generally applicable) on its face. *Bacon v. Woodward*, 2024 WL 3041850, at *1 (9th Cir. June 18, 2024).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 12
CASE NO. 2:21-cv-00296 TOR

ordinance that in its operation effectively banned only the ritual animal sacrifice performed by practitioners of the Santeria religion, was not neutral because it accomplished a 'religious gerrymander,' *i.e.*, an impermissible attempt to target religious practices through careful legislative drafting." *Barr*, 949 F.3d 1210 (quoting *Lukumi*, 508 U.S. at 535-37).

Here, there is no question that the Proclamation is facially neutral. Neither does the record compel the conclusion that suppression of religion or religious practice was the object of the Proclamation. The Proclamation did not suppress, target, or single out the practice of any religion because of religious content. It required all healthcare workers to be vaccinated against COVID-19 as a condition of employment unless entitled under antidiscrimination statutes to "disability-related reasonable accommodations" or "sincerely held religious belief accommodations." Declaration of Brian Schaeffer ("Schaeffer Decl."), Ex. 3 ("Procl."), at 5.

That some healthcare workers may object to the vaccination requirement on religious grounds does not destroy the neutrality of the Proclamation. "The Free Exercise Clause is not violated even if a particular group, motivated by religion, may be more likely to engage in the proscribed conduct." *Wiesman*, 794 F.3d at 1077. It "makes no difference whether a violator acts because of religious convictions or for other reasons, for '[t]he same conduct is outlawed for all.'" *Id.* (quoting *American Life League, Inc. v. Reno*, 47 F.3d 642, 654 (4th Cir. 1995)). "COVID-19 vaccination

requirements have been held to be facially neutral when they apply to an entire category (i.e., all employees) and 'do[] not single out employees who decline vaccination on religious grounds.'" *Schmidt v. City of Pasadena*, 2023 WL 4291440, at \*12-13 (C.D. Cal. March 8, 2023) (quoting *UnifySCC v. Cody*, 2022 WL 2357068, at \*6 (N.D. Cal. June 30, 2022)).

The Court should conclude that the Proclamation is neutral.

### b.   The City's Implementation of the Proclamation was Generally Applicable.

As discussed *supra*, section IV.A, the Ninth Circuit's conclusion that Plaintiffs "plausibly pled" that the Proclamation was not generally applicable rested on the allegations in the Complaint. *Bacon*, 104 F.4th at 751. On summary judgment, the Court must conduct the analysis anew, this time with the benefit of a factual record.

The "question of general applicability addresses whether a law treats religious observers unequally." *Barr*, 949 F.3d at 1235. A "law is not generally applicable if its prohibitions substantially underinclude non-religiously motivated conduct that might endanger the same governmental interest that the law is designed to protect." *Wiesman*, 794 F.3d at 1079 (citing *Lukumi*, 508 U.S. at 542-46). "In other words, if a law pursues the government's interest 'only against conduct motivated by religious belief' but fails to include in its prohibitions substantial, comparable secular conduct

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 14
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

that would similarly threaten the government's interest, then the law is not generally applicable." *Id.* (quoting *Lukumi*, 508 U.S. at 545).[5]

For example, the *Lukumi* Court concluded that the challenged ordinances were not generally applicable because they "pursue[d] the city's governmental interests only against conduct motivated by religious belief." *Lukumi*, 508 U.S. at 545. Because the ordinances "fail[ed] to prohibit nonreligious conduct that enganger[ed] these interests in a similar or greater degree than Santeria sacrifice does," *id.* at 543, it "was religion, and religion alone, that bore the burden of the ordinances, giving the ordinances the 'appearance of a prohibition that society is prepared to impose

---

[5] Notably, while a "government policy will fail the general applicability requirement if it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way,' or if it provides 'a mechanism for individualized exemptions[,]'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 526 (2022) (quoting *Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522, 534 (2021)), "explicit, categorical exemptions for religious objectors, with accommodations to be considered based on non-discretionary criteria, are not 'individualized exemptions' within the meaning of *Fulton*." *Rosa v. City of Issaquah in & for Washington*, 2025 WL 2733672, at *23 (W.D. Wash. Sept. 25, 2025) (citation omitted), *appeal docketed*, Case No. 25-6600 (9th Cir. 2025).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 15
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

upon [Santeria worshippers] but not upon itself.'" *Selecky*, 586 F.3d at 1134 (quoting *Lukumi*, 508 U.S. at 545).

The Ninth Circuit's conclusion that the City's implementation of the Proclamation was not generally applicable rested on the allegations that "once unvaccinated firefighters were terminated, Spokane would turn to firefighters from neighboring fire departments to fill the gaps left by the firefighters' departure even though those fire departments granted religious accommodations to their employees. In other words, Plaintiffs' alleged Spokane implemented a vaccine policy from which it exempted certain firefighters based on a secular criterion—being a member of a neighboring department—while holding firefighters who objected to vaccination on purely religious grounds to a higher standard." *Bacon*, 104 F.4th at 751. The evidence on summary judgment, however, refutes these allegations.

> **(1)** **The City Required Surrounding Fire Districts and Private Contractors to Comply with the Proclamation's Mandate, Thereby Furthering the Proclamation's Interest.**

The Proclamation recognized that "healthcare workers face COVID-19 exposures in a variety of healthcare settings, with those involving direct patient care likely at higher risk." Procl., WHEREAS ¶12. It "is the duty of every employer to protect the health and safety of employees by establishing and maintaining a healthy and safe work environment and by requiring all employees to comply with health

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 16
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

and safety measures." *Id.*, WHEREAS ¶17. The governmental interests advanced by the Proclamation included protecting the health and safety of "persons who cannot be vaccinated for medical reasons, youth who are not eligible to receive a vaccine, immunocompromised individuals, and vulnerable persons…," *id.*, WHEREAS ¶7, and helping to "preserve and maintain life, health, property or the public peace…" *id.*, NOW, THEREFORE ¶29. To "reduce the spread of COVID-19 in our communities," the Proclamation required healthcare providers to be fully vaccinated against COVID-19 or to receive a medical or religious exemption and accommodation from the vaccine requirement. *Id.*, WHEREAS ¶19.

An employer has control over its employees, not independent contractors. *See, e.g.*, *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999) ("Title VII protects employees but does not protect independent contractors."). Recognizing this critical distinction, the Proclamation gave the City the option to shift responsibility for compliance with the Proclamation to its contractors.

The facially-neutral Proclamation details how an employer can uniformly ensure compliance with both its employees and the employees of its contractors. *See Pilz v. Inslee*, No. 22-35508, 2023 WL 8866565, at *2 (9th Cir. Dec. 22, 2023) (holding the Proclamation is generally applicable because "it applies to all relevant employees unless they can show that they are legally entitled to an exemption" (citing *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177-78 (9th Cir. 2021)).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 17
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

The Proclamation dictates how employers are to address exemptions and accommodations:

> …Health Care Providers are not required to get vaccinated against COVID-19 under this Order if they are unable to do so because of a disability or if the requirement to do so conflicts with their sincerely held religious beliefs. … In implementing the requirements of this Order … operators of Health Care Settings: Must provide any disability-related reasonable accommodations and sincerely held religious belief accommodations to the requirements of this Order that are required under the Americans with Disabilities Act of 1990 (ADA), the Rehabilitation Act of 1973 (Rehabilitation Act), Title VII of the Civil Rights Act of 1964 (Title VII), the Washington Law Against Discrimination (WLAD) and any other applicable law…. [O]perators of Health Care Settings are not required to provide such accommodations if they would cause undue hardship.

Procl., §2(a). Section 4 addresses contractors, permitting "the employer of a contractor…to assume responsibility" for vaccination and accommodations:

> 4. <u>Election to Require Employers of Contractors to Assume Responsibility for Vaccination Verification and Accommodation Requirements</u>
>
> Notwithstanding anything to the contrary in this Order, a State Agency, an operator of an Educational Setting, or an operator of Health Care Setting may elect **to require the employer of a contractor who is subject to this Order to assume responsibility for the vaccination verification and accommodations requirements in this Order.** This election may be made with respect to any or all of an employer's contractor-employees who are subject to this Order.

*Id*., §4(a) (emphasis added). This is exactly what the City did.

The City sent letters to its surrounding fire districts, requesting certification that the fire districts had procedures in place to ensure that any contract personnel performing activities occurring in person "will be performed by personnel who are

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 18
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

fully vaccinated as required by the…Proclamation." Schaeffer Decl., ¶¶35-37, 40, 44, Exs. 12, 13, 15. When the fire districts refused, the City negotiated with them to reach agreement on a revised certification providing that work "will be performed by personnel who are fully vaccinated or in compliance with additional safety measures instituted as an accommodation for a recognized exemption from the vaccination mandate, as required by the…Proclamation." *Id.*, ¶¶38, 41, 43, 45, Ex. 14; *see also id.*, Exs. 18-19 (imposing similar requirements); *see also* Declaration of Lonnie Rash, Ex. 1. By requiring surrounding fire districts to ensure personnel were either vaccinated or, if accommodated, subject to additional safety measures, the certification advanced the Proclamation's purpose of limiting the spread of COVID-19 and protecting the health and safety of healthcare workers and the public.

With respect to the City's contract with American Medical Response, Inc. ("AMR"), the City sent a letter to AMR requiring its compliance with the Proclamation. Schaeffer Decl., ¶¶49-51. The parties negotiated language providing that AMR "commits to use reasonable efforts to not respond with unvaccinated individuals to EMS calls for service in the City of Spokane. When clinically appropriate, the Contractor shall put the interests of the patient first, e.g., if an unvaccinated crew **with an approved accommodation** is closer to a cardiac arrest or other time critical call, that unvaccinated crew will respond." *Id.*, Ex. 22 (emphasis added). By requiring AMR to respond to EMS calls with accommodated

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 19
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

personnel only when clinically necessary, the certification advanced the Proclamation's purpose of limiting the spread of COVID-19 and protecting the health and safety of healthcare workers and members of the public.

The City thus treated firefighters/EMTs from neighboring jurisdictions and its other contractors the same as its own employees, including religious objectors. Both groups were required to be vaccinated or have received an exemption and accommodation in compliance with the Proclamation. The City had no control over the accommodation decisions made by other employers, but it did use best efforts to ensure unvaccinated individuals were not responding to medical calls for the City.

**(2)    The City Did Not Rely on Unvaccinated Personnel from Other Jurisdictions to Fill Gaps Left By its Firefighters' Departure.**

Contrary to the allegations in the Complaint, the City did **not** "turn to firefighters from neighboring fire departments to fill the gaps left by the firefighters' departure." *Bacon*, 104 F.4th at 751. For decades predating COVID-19, the City has been party to a Mutual Aid Agreement with several entities covering Spokane County fire protection services. Schaeffer Decl., ¶¶14-16. The Mutual Aid Agreement provides that each party to the agreement "shall be responsible for its own equipment and personnel used in providing assistance" and "shall be responsible for all liabilities that may occur or arise in any way out of the

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 20
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

performance" of the agreement. *Id.*, ¶¶19-22. The City does not control the employees of neighboring fire districts. *Id.* ¶¶12, 19-22.

During the COVID-19 pandemic, the City did **not** issue mutual aid requests for EMS calls. *Id.*, ¶23. The City did **not** use the Mutual Aid Agreement to supplement or replace the portion of its force that chose to not receive the vaccination. *Id.*, ¶24. All firefighters responding to calls pursuant to the Mutual Aid Agreement were required to be vaccinated or accommodated in compliance with the Proclamation. *Id.*, ¶¶51-56.

The City was also party to various Automatic Aid Response Agreements, all of which predated the COVID-19 pandemic. *Id.*, ¶¶25-30. These agreements were executed to create an automatic aid process where responses to incidents are made by the closest and most appropriate resource. *Id.* ¶30. Signatory agencies agree to respond to any reported fire, EMS, rescue or service-related incident with the appropriate apparatus into the jurisdiction of the other agencies that are parties to the agreement. *Id.* These responses do **not** require a specific request from an agency— they are automatic upon dispatch. *Id.* ¶¶30-31. The City did **not** use the Automatic Aid Response Agreements to supplement or replace the portion of its force that chose to not receive the vaccination. *Id.* ¶¶46-47. To the extent any personnel responded to calls pursuant to an Automatic Aid Response Agreement, the City required that such personnel be vaccinated or accommodated in compliance with the

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 21
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Proclamation. *Id.*, ¶48. Indeed, the City negotiated (1) the assignment of *vaccinated* firefighters from neighboring jurisdictions to firehouses that were closer to City limits; and (2) the assignment of *unvaccinated* firefighters from neighboring jurisdictions to firehouses that were farther from City limits to reduce the impact of unvaccinated healthcare providers on its residents. *Id.*, ¶¶39, 42, 45.

The City did not undermine its interest in enforcing the Proclamation. It applied the Proclamation to its employees the same way it applied the Proclamation to its contractors. Both groups were required to comply with the Proclamation by becoming fully vaccinated against COVID-19 or by receiving an accommodation under an antidiscrimination statute. And although the City has no ability to control accommodation decisions made by third parties, it nevertheless went *beyond* what the Proclamation required and negotiated and implemented additional requirements for contractors to advance the Proclamation's goals of protecting the health and safety of City employees and the public they serve. The City's implementation of the Proclamation was generally applicable.

### c.      The City's Implementation of the Proclamation Survives Rational Basis Review.

The two-tiered rational basis inquiry first asks whether the challenged policy has a legitimate purpose, then whether the challenged policy promotes that purpose. *Erotic Serv. Provider Legal Educ. & Rsch. Proj. v. Gascon*, 880 F.3d 450, 457 (9th

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 22
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Cir. 2018). Under rational-basis review, a policy "is presumed constitutional, and 'the burden is on the one attacking the [policy] to negate every conceivable basis which might support it.'" *Boardman v. Inslee*, 978 F.3d 1092, 1117 (9th Cir. 2020). Rational basis review is satisfied where the state decisionmaker "could rationally have decided" that its action would further a legitimate state interest. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466 (1981). "Given the standard of review, it should come as no surprise that [courts] hardly ever strike[] down a policy as illegitimate under rational basis scrutiny." *Trump v. Hawaii*, 585 U.S. 667, 705 (2018).

Here, the City's implementation of the Proclamation plainly survives rational basis review. The Proclamation was intended to slow the spread of COVID-19 and safeguard the health and well-being of City employees from COVID-19. *See supra*, section IV.B.3.b. Courts have consistently concluded that such a purpose is a legitimate purpose. *See, e.g.*, *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling interest."); *Slidewaters LLC v. Wash. State Dep't of Labor and Ind.*, 4 F.4th 747, 758 (9th Cir. 2021) (concluding state has legitimate government interest in preventing spread of COVID-19); *Rosa*, 2025 WL 2733672, at *26-27 (same).

Courts have also repeatedly held that requiring employees to be vaccinated against COVID-19 is rationally related to the interest of safeguarding public health

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 23
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

and preventing the spread of COVID-19 because "data show[s] that approved COVID-19 vaccines drastically reduce the chances of contracting and spreading the virus, or of being afflicted with serious illness or death from COVID-19 if the virus is contracted." *UnifySCC*, 2022 WL 2357068, at *8; *see, e.g.*, *Wise v. Inslee*, 2022 WL 1243662, at *3 (E.D. Wash. Apr. 27, 2022) ("The Proclamation is rationally related to that interest because it is based on overwhelming evidence that the vaccines are safe and effective, and increasing vaccination rates among those employees who come into regular contact with vulnerable populations…is a rational action to reduce the spread of COVID-19."). Indeed, the Ninth Circuit held as much in this case. *Bacon*, 2024 WL 3041850, at *1 ("Because requiring vaccination of public safety and healthcare workers is rationally related to that goal, the Proclamation survives the firefighters' facial Free Exercise challenge.").

Accordingly, the Court should conclude that the City's implementation of the Proclamation survives rational basis and does not violate the Free Exercise Clause.

### 4.    Even if Strict Scrutiny Applies, Summary Judgment Should Be Denied.

Even assuming strict scrutiny applies (it does not), Plaintiffs are not entitled to summary judgment, as genuine issues of material fact exist as to whether the City's implementation of the Proclamation satisfied the strict scrutiny standard. *See Hunter ex rel. Brandt v. Regents of Univ. of California*, 190 F.3d 1061, 1063 (9th

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 24 CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Cir. 1999) (whether a restriction survives strict scrutiny requires factual findings, and whether those facts are sufficient to meet the strict scrutiny standard is a mixed question of law and fact).

To survive strict scrutiny, a restriction must be "narrowly tailored" to serve a "compelling" state interest. *Roman Catholic Diocese of Brooklyn*, 592 U.S. at 18. There is no dispute that, at the time of the Proclamation, "[s]temming the spread of COVID-19[,]" particularly by and amongst healthcare workers, was "unquestionably a compelling interest[.]" *Id*. Plaintiffs do not dispute as much. The sole question, then, is whether the City's implementation of the Proclamation was "narrowly tailored" to serve this interest. In making this assessment, courts analyze whether there were less restrictive means of furthering the government's goals, including by assessing whether a restriction is underinclusive or overinclusive in scope. *Id.*; *Lukumi*, 508 U.S. at 546.

### a. Genuine Issues of Material Fact Exist as to Whether There Were Less Restrictive Means of Stopping the Spread of COVID-19.

The Ninth Circuit, in reversing this Court's Rule 12(c) dismissal of Plaintiffs' Free Exercise claim, accepted as true the Complaint's allegations that testing, masking, temperature checks, social distancing, and natural immunity would have been less restrictive means of furthering the Proclamation's "compelling interest of stopping the spread of COVID-19." *Bacon*, 104 F.4th at 753. But on summary

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 25 CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

judgment, genuine issues of material fact exist as to whether these mitigation strategies could have effectively done so.

Dr. Lynch, a board-certified physician in infectious disease, Declaration of John Lynch ("Lynch Decl.") ¶1, Ex. A, explains that requiring COVID-19 vaccination was the best means by which the City could slow the spread of COVID-19 and prevent serious illness or death and that "[n]o other public health strategy could effectively meet the City's goals of stemming the spread of COVID-19 and maintaining critical healthcare services and operations while protecting the health, safety, and well-being of City employees and the public at large." *Id.*, ¶32; *see also id.*, ¶2. He also explains why the alternatives of testing, masking, social distancing, temperature checks, and natural immunity are inferior to vaccination. *Id.*, ¶¶7-28.

Specifically, with regards to testing, Dr. Lynch confirms that, even when done regularly, COVID-19 testing "would not have been an adequate" strategy to prevent the spread of the virus for several reasons. *Id.*, ¶14. Antigen (rapid) COVID-19 tests produce false negatives and, to the extent they are accurate, they capture the infection status of an individual for only that moment in time; PCR tests have delayed results and a person, while waiting for their test result, would be working with others and potentially transmitting COVID-19; and there were shortages of rapid antigen tests during the Delta wave of the pandemic. *Id.* ¶¶15-20.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 26
CASE NO. 2:21-cv-00296 TOR

An employer masking requirement is limited by the fact that, unlike vaccination, the requirement only applies when the employee is at work, and masks, like other PPE, only work when on and used correctly. *Id.* ¶¶21-23; *see also* Mitchell Decl., Ex. C at 22:5-24:1; *id.*, Ex. D at 34:13-35:11, 38:1-14; *id.*, Ex. E at 41:21-43:8; *id.*, Ex. G at 23:23-25:17, 121:13-22; *id.*, Ex. H at 38:4-42:5; *id.*, Ex. I at 54:10-56:25 (acknowledging that firefighters took masks off to sleep, eat, drink, and interact with others, including while on response calls, and that masks were not always worn properly); Declaration of Tom Williams ("Williams Decl.") ¶¶10, 13 (recognizing that for firefighters, who work 24-hour shifts and sleep at the station, sleeping in a mask is not a viable option, nor is wearing a mask at all times while responding to fires). Similarly, masks only "shore up protection on the outside;" whereas "vaccines shore up security through immunity from the inside." Lynch Decl. ¶21. Social distancing is likewise insufficient. While it can serve as a layer of mitigation, this is complicated by the fact that it requires individuals to maintain physical distance to be effective. *See id.* ¶27; *see also* Mitchell Decl., Ex. C at 26:18-27:6; *id.*, Ex. D at 43:2-17; *id.*, Ex. G at 26:24-28:2; *id.*, Ex. H at 45:18-25; *id.*, Ex. I at 61:1-63:9 (noting that firefighters could/would not always socially distance, including while on response calls); Williams Decl. ¶¶12-13 (noting that EMTs and firefighters cannot maintain six feet of distance when fighting fires or engaged in patient care). It is further complicated by the fact that aerosolized COVID-19 virus

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 27
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

remains floating in the air and can persist even after an infected person leaves the space, creating a hazard for people who subsequently enter the space and for people in adjacent spaces with shared air. Lynch Decl. ¶27.

Temperature checks are an "ineffective tool to reduce the risk of COVID-19 transmission" because, for example, "people can have asymptomatic infections and transmit COVID-19, be in the pre-symptomatic but infectious stage, and have other symptoms of COVID-19 and not have a fever." *Id.* ¶28. And natural immunity is ineffective because being fully vaccinated provides better protection and a stronger immune response than prior COVID-19 infection and antibody tests can only indicate a high likelihood that a person was infected at some time in the past; they do not imply that a person has protection from subsequent infection. *Id.* ¶¶7-12.

Indeed, Dr. Lynch opines that, based on the information and evidence available in fall 2021, even with such safety measures in place, an unvaccinated person, and specifically, unvaccinated firefighters, posed a materially higher risk of

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 28
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

contracting COVID-19, transmitting COVID-19 to others, and developing severe disease, than a vaccinated person.[6] *See id.* ¶¶32, 35.

Citing *Holt v. Hobbs*, 574 U.S. 352, 364–65 (2015), Plaintiffs contend that because other departments allegedly implemented accommodations such as masking, testing, social distancing, and temperature checks for their firefighters, such accommodations were sufficient to stem the spread of COVID-19. MPSJ, p.16. But the mere fact that other departments implemented these mitigation strategies does not mean that those strategies were effective at preventing COVID-19's spread. *Holt* does not suggest otherwise. *See Holt*, 574 U.S. at 364-65 (providing only that "if a less restrictive means is available for the Government to achieve its goals, the Government must use it").

Nor does the fact that the City continued using other firefighters and contractors in accordance with pre-existing contracts and mutual/auto aid

---

[6] *See also Lavelle-Hayden v. Legacy Health*, 744 F. Supp. 3d 1135, 1159 (D. Or. 2024) ("With respect to alternative mitigation measures, Dr. Cohen states that although they 'can be effective,' they were and are not a substitute for vaccination."); *Slater v. Behavioral Health Res.*, 2024 WL 4290289, at *4 (W.D. Wash. Sept. 25, 2024) (expert testimony regarding masking, testing, and social distancing are not sufficient safety measures for unvaccinated); *Petersen v. Snohomish Reg'l Fire & Rescue*, 150 F.4th 1211, 1219 (9th Cir. 2025) (same).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 29
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

agreements constitute an admission by the City that the accommodations implemented by those entities were effective, as Plaintiffs contend. *See* MPSJ, p.15. To the contrary, the record demonstrates that the City disputed the sufficiency and effectiveness of these alternative methods and did everything it could to prevent unvaccinated firefighters and emergency personnel from providing healthcare services within the City. *See* Section IV.B.3.b, *supra*. At the same time, the City agreed to (1) work to reassign unvaccinated firefighters to City positions not covered by the Proclamation, and (2) remove the EMT certification requirement from certain nonhealthcare-related fire department positions to enable unvaccinated firefighters to fill those roles. Schaeffer Decl. ¶9; Williams Decl. ¶¶3-7. In doing so, the City again affirmed its commitment to using the least restrictive means to further the Proclamation's compelling interest.

Plaintiffs submit no competent evidence demonstrating the effectiveness of their proposed less restrictive means, instead offering mere argument and conjecture. This is insufficient to establish as a matter of law that less restrictive means existed. *See Smith v. Mack Trucks, Inc.*, 505 F.2d 1248, 1249 (9th Cir. 1974) ("Legal memoranda and oral argument, in the summary-judgment context, are not evidence, and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment."). Summary judgment should be denied.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 30
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

### b.    Genuine Issues of Material Fact Exist as to Whether the Proclamation was Underinclusive.

Plaintiffs have likewise failed to demonstrate that the City's implementation of the Proclamation was underinclusive as a matter of law. A law is underinclusive when it "plac[es] strict limits on" certain activities while allowing other activities that "create the same problem." *Reed v. Town of Gilbert*, 576 U.S. 155, 172 (2015). Put differently, a law that "fail[s] to prohibit nonreligious conduct"—or that fails to prohibit the religious conduct of some, but not others—fails narrow tailoring if the other permissible conduct "endangers these interests in a similar or greater degree." *Lukumi*, 508 U.S. at 543.

In arguing that the City's conduct meets the standard for underinclusiveness, Plaintiffs contend Defendants excluded them "from employment while simultaneously permitting unvaccinated secular actors – mutual-aid firefighters and private EMTs – to perform the same emergency-response work previously performed by their religiously-exempt but terminated employees…." MPSJ, p.14. On these same allegations, the Ninth Circuit determined that, at the pleading stage, "[t]he underinclusiveness of the [Proclamation] [was] self-evident" for the same reasons that it was not generally applicable. *Bacon*, 104 F.4th at 753 (quoting *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 793 (1978)). On summary judgment, however, Plaintiffs' allegations are insufficient to demonstrate underinclusiveness.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 31
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

As demonstrated above, *supra* Section IV.B.3.b, by requiring contractors' employees from neighboring jurisdictions to either be vaccinated or have received an exemption and accommodation in compliance with the Proclamation, the City treated other firefighters and contractors, including religious objectors, the same as its own employees. And despite the fact that the City had no control over how and when other employers granted accommodations, the City affirmatively attempted to reduce the impact of unvaccinated healthcare providers on its residents by (1) requiring lawful accommodation of the unvaccinated; (2) ceasing to use mutual aid requests for EMS calls during the relevant time; (3) negotiating the assignment of vaccinated firefighters from neighboring jurisdictions to firehouses that were closer to City limits; and (4) negotiating the assignment of unvaccinated firefighters from neighboring jurisdictions to firehouses that were farther from City limits. Schaeffer Decl. ¶¶35-56 and related exhibits. Because genuine issues of material fact exist as to whether these efforts were underinclusive, summary judgment should be denied.

## C.    Plaintiffs Are Not Entitled to Summary Judgment on Defendants' Qualified Immunity Affirmative Defense.

Defendants named in a Section 1983 action in their personal capacities are entitled to assert qualified immunity from civil liability. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 32
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

analyzing a qualified immunity defense, the court must determine: (1) whether a constitutional right would have been violated on the facts alleged; and (2) whether the right was clearly established when viewed in the specific context of the case. *Id.* When the plaintiff is the movant for summary judgment on a defendant's qualified immunity affirmative defense, courts examine whether, in the light most favorable to the government officials, a genuine dispute of material fact exists from which a reasonable jury could find that no constitutional violation occurred. *See id.*; *see also* Fed. R. Civ. P. 56. But even if there is no genuine dispute that a constitutional violation occurred, a court must still deny a plaintiff summary judgment if the plaintiff fails to show that the law was clearly established at the time of the violation. *See Pearson*, 555 U.S. at 232. A right is clearly established where existing precent has "placed the…constitutional question beyond debate" such that "every reasonable official would [have understood] that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Broad principles ordinarily cannot constitute clearly established law. *White v. Pauly*, 580 U.S. 73, 79 (2017). Rather, "clearly established law must be 'particularized' to the facts of the case." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Here, for the reasons above, Plaintiffs have failed to carry their burden of showing that there is no genuine dispute that a constitutional violation occurred. Additionally, there are factual disputes regarding Defendants Woodward and

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 33
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Schaeffer's "personal participation" in the alleged constitutional violation. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). For example, Defendant Woodward had almost no knowledge about the religious beliefs or vaccine status of firefighting personnel at the City, including Plaintiffs. Woodward Decl. ¶¶2-6. And Woodward and Schaeffer deny knowing at that time that unvaccinated firefighters from other employing entities performed emergency medical services in the City. Woodward Decl. ¶¶2-6; Schaeffer Decl. ¶48.

But even if Plaintiffs had shown that a constitutional violation occurred beyond dispute, Defendants Woodward and Schaeffer are nevertheless entitled to qualified immunity because Plaintiffs have plainly failed to show that a clearly established right existed at the time of the Defendants' actions which put them on notice of the unconstitutionality of their conduct. Plaintiffs offer nothing more than general recitations of legal principles when arguing that the law clearly established that Defendants' implementation of the Proclamation violated the Free Exercise Clause. *See* MPSJ, p.17.

No case cited by Plaintiffs involves vaccine mandates, much less COVID-19 vaccine mandates. The only case that involves COVID-19 at all, *Roman Catholic Diocese of Brooklyn*, pertained to a gubernatorial order that *expressly* imposed restrictions on attendance at religious services. *See id.*, pp.15-16. This is insufficient to inform a reasonable government official that a facially neutral COVID-19 vaccine

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 34
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

requirement (which permitted religious exemptions) could violate the Constitution. In fact, cases that have considered the issue have found that constitutional issues surrounding COVID-19 vaccine mandate were not clearly established. *See, e.g.*, *Curtis v. Inslee*, 709 F. Supp. 3d 1257, 1270 (W.D. Wash. 2023), *aff'd*, 154 F.4th 678 (9th Cir. 2025) (holding that individual defendants were entitled to qualified immunity because there was no clearly established law regarding the constitutionality of a public official's ability to mandate COVID-19 vaccination under the Equal Protection Clause, Due Process Clause, or Spending Clause).

Plaintiffs have failed to show that a constitutional violation was beyond dispute and clearly established. The Court should deny their request for summary judgment on Defendant Woodward and Schaeffer's qualified immunity affirmative defense.

### V.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment should be denied.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 35
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

DATED this 19th day of March 2025.

By s/ J. Chad Mitchell
J. Chad Mitchell, WSBA #39689
Jesse L. Taylor, WSBA #51603
Vanessa Williams-Hall, WSBA #54308
Molly Gibbons, WSBA #58357
Hathaway Burden, WSBA #52970
Monica Romero, WSBA # 58376
Summit Law Group, PLLC
315 Fifth Avenue S., Suite 1000
Seattle, WA  98104-2682
(206) 676-7000
chadm@summitlaw.com
jesset@summitlaw.com
vanessaw@summitlaw.com
mollyg@summitlaw.com
hathawayb@summitlaw.com
monicar@summitlaw.com

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 36
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Nathan J. Arnold
Arnold Jacobowitz & Alvarado PLLC
720 Seneca Street, Suite 107, No. 393
Seattle, WA  98052
*nathan@AJALawyers.com*

Dennis McGlothin
Western Washington Law Group, PLLC
10485 NE 6th St., #2620
Bellevue, WA 98004
*docs@westwalaw.com*

***Attorneys for Plaintiffs***

DATED this 19th day of March, 2026.

s/ De'Chanelle Ennis
De'Chanelle Ennis

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 37
CASE NO. 2:21-cv-00296 TOR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001