HON. THOMAS O. RICE

ARNOLD JACOBOWITZ & ALVARADO
Nathan J. Arnold, WSBA No. 45356
*Attorney for Plaintiffs*
R. Bruce Johnston, WSBA No. 4646
*Of Counsel*
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221
Nathan@ajalawyers.com
Bruce@rbrucejohnston.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL BACON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NADINE WOODWARD, et al.,<br><br>Defendants. | **CASE NO. 2:21-cv-00296-TOR**<br><br>PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>ORAL ARGUMENT REQUESTED<br><br>(Noting Date: April 20, 2026) |

PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 1

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Suite 107, No. 393
Seattle, WA 98101
(206) 799-4221

## I.    INTRODUCTION

Each of Defendants' arguments fail because:

1. Defendants ask this Court to ignore or defy the Ninth Circuit's decision in *Bacon v. Woodward*, 104 F.4th 744 (9th Cir. 2024).

2. Defendants attempt to impeach their own, judicially admitted, grants of Religious Exemptions, by ignoring this Court's Order finding that Defendants granted Plaintiffs religious exemptions.

3. Defendants conflate Title VII/WLAD standards, ignoring controlling Ninth Circuit authority regarding Free Exercise.

4. Defendants misrepresent their sham attempts to justify their undeniably underinclusive "as applied" policies and discriminatory termination of all Plaintiffs.

5. Defendants argue that their most-restrictive policy – termination - was somehow the required least-restrictive policy, and that their blunt, untailored policy was somehow "narrowly tailored."

6. Finally, the Defendants assert qualified immunity despite rights clearly established for more than thirty years.

PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 2

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Suite 107, No. 393
Seattle, WA  98101
(206) 799-4221

## II.    ARGUMENT IN REPLY

**A.    *Bacon* is Controlling as to Plaintiffs' Free Exercise Claim.**

**1.    Defendants' Policy, As Applied, Was Not "Generally Applicable" and "Strict Scrutiny" Applies.**

The law of this case, is unequivocally clear:

> By continuing to work with unvaccinated firefighters from surrounding departments, Spokane undermined its interest and destroyed any claim of general applicability.

> * * * * * *

> The distinction between firefighters from within the County [sic] and those from without in no way aligns with or promotes the stated interest of the Proclamation. The existence of an exemption on that basis is therefore sufficient to trigger strict scrutiny.

> * * * * *

> Because the Proclamation is not generally applicable as applied to the firefighters, it is subject to strict scrutiny. *Bacon*, 104 F.4th at 752.

The undisputed facts now established by admissible evidence are that Defendants continued "to work with unvaccinated firefighters from surrounding departments." That use of firefighters from surrounding departments was knowing and ubiquitous, and actually more egregious than those hypothesized in *Bacon* at 754:

> Worse, the terminated firefighters could allege that they were hired by a neighboring jurisdiction that responds to emergencies in Spokane. *Bacon* at 754.

That "absurdity" occurred.  *See* ECF 135, 136. *See also* ECF 137, 140.

More than nine (9) pages of Defendants' overlength Brief ask this Court to ignore these clear holdings of the Ninth Circuit in *Bacon* (*e.g.,* at 3:10–5:11, 11:3–16:14, and 22:18–24:16); this is fatally inconsistent with the law of this case. *United States v. Thrasher,* 483 F.3d 977, 981 (9th Cir. 2007).

## 2.    "The Proclamation, as applied, is Totally Underinclusive."[1]

The Ninth Circuit in *Bacon* held that the Defendants applied the Proclamation in a "totally underinclusive" manner. *Bacon*, at 753:

> Here, "[t]he underinclusiveness of the [Proclamation] is self-evident" *for the same reasons that it is not generally applicable. First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 793, 98 S. Ct. 1407, 55 L. Ed. 2d 707 (1978). Though the mandate applies to all firefighters employed in Spokane, it did not require firefighters from surrounding counties to be vaccinated if their County provided an accommodation. And those firefighters, notwithstanding Spokane's threat to terminate its own nominally exempted employees, continued to work within city limits through mutual aid agreements.2 By requiring its own employees to be vaccinated without accommodation while continuing to work with unvaccinated firefighters from other counties, *Spokane's application of the Proclamation failed to fully account for the issues that would undermine its interest*. [Emphasis Added].

---

[1] Quoting *Bacon* at 753.

PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 4

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Suite 107, No. 393
Seattle, WA  98101
(206) 799-4221

There is no genuine dispute that Defendants' application of their policies were underinclusive for reasons stated by the Ninth Circuit in *Bacon*.[2]

### 3.    The City's Application of the Proclamation was not Narrowly Tailored.

Following these precedential holdings, establishing the law of ***this*** case, Defendants have the burden to prove its infringement on Plaintiffs' Free Exercise rights were narrowly tailored to serve a compelling governmental interest, using the least restrictive means. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 546 (1993), *Shakur v. Schriro,* 514 F.3d 878, 889 (9th Cir. 2008). As the *Bacon* court noted at 753: "In sum, the Complaint includes facts showing that the City's application of the Proclamation was not narrowly tailored**.**" *Bacon* at 753.

Those allegations have now been proven without genuine dispute and "the City's application of the Proclamation was not narrowly tailored."

---

[2] Defendants argue that the Ninth Circuit did not decide whether implementation of the Proclamation was neutral. ECF 155 at 12 n.4. This misunderstands the caselaw that states a policy that is "underinclusive" demonstrates both a failure to be neutral and generally applicable. *See Church of Lukumi,* 508 U.S. 520 (1993); *Fulton v. City of Philadelphia,* 593 U.S. 522 (2021). The finding of "underinclusiveness" resolved both issues.

PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 5

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Suite 107, No. 393
Seattle, WA  98101
(206) 799-4221

**B.    Religious Sincerity Cannot be Revisited Where Defendants Placed Each Plaintiff in a Protected Class Status.**

Defendants' five (5) page attack on religious sincerity [3] ignores this Court's Order on Preliminary injunction:

the City recognizes exemptions for those who qualify for accommodations due to their sincerely held religious beliefs or medical conditions. ECF 63 at 11.[4]

Additionally, and cumulatively, in its Answer to Plaintiffs' First Amended Complaint (FAC), the Defendants judicially admit granting Plaintiffs' religious

---

[3] Defendants provide citations to multiple Plaintiff deposition transcripts and then conclude that the "alleged religious beliefs appear to be far more secular in nature," without further explanation or identification of specific Plaintiffs who hold secular beliefs, not sincere religious ones. ECF 155 at 10 n.2.  This is a conclusory allegation, not a factual demonstration. Defendants provide nothing in their record to demonstrate that the Plaintiffs' religious beliefs are not sincere. *See Meagher v. King County,* 2:23-cv-00741-RSL, at *6 (W.D. Wash. March 13, 2026), attached hereto as Attachment A.

[4] Of particular relevance is that the Defendants, in their MJOP at ECF 70, 6:14-15, which was granted, cite this exact language from ECF 63 that exemptions were granted, which they never deny.

PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 6

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Suite 107, No. 393
Seattle, WA  98101
(206) 799-4221

exemptions to all Plaintiffs.[5] Sincerity was not raised at the Ninth Circuit. They now attempt to impeach their own grants of religious exemption in a full turnabout. A retrospective challenge to religious sincerity provides no defense to a Free Exercise Claim. The Plaintiffs made known, in some detail, their religious beliefs and their corollary objections to receiving the COVID-19 vaccine in 2021.[6] Absent the vaccine

---

[5] *See* ECF 123, ¶13 ("Defendants admit Plaintiffs were granted exemptions and deny any remaining allegations in paragraph 13"); *see also* ECF 54 at 3-4; ECF 54-1 at 2:12-13; ECF 54-5:9-13; 2:5-11; ECF 70:3:2-8. Woodward Dep. 87:12-14 ("We accepted the – the religious exemptions…."), attached hereto as Exhibit A to Decl. of Nathan J. Arnold (hereinafter, "Woodward Dep.").

[6] *See* Declaration of Plaintiff Fuller , in which he produces copies of his request for religious exemptions and confirmation from Defendants granting a sincerely held religious belief, in which Defendants state, "If an exemption request is properly supported, *the next step in the process* is for the City to determine whether it can reasonably accommodate the unvaccinated employee...**Your exemption request has been accepted and the City understands you have a sincerely held religious belief that as you have described, makes you unable/unwilling to receive the COVID-19 vaccine and precludes you from complying with Proclamation 21-14.1…**."

PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 7

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Suite 107, No. 393
Seattle, WA  98101
(206) 799-4221

requirement of Proclamation 14-1, the Defendants could not have inquired into Plaintiffs' religious beliefs. Wash. Rev. Code § 49.60.208.

In 2021, after conducting what, as a matter of law under the Proclamation was required to be a rigorous investigation of the Plaintiffs' religious beliefs and the legitimacy of their corollary objections to receiving the vaccine, *see* n.6, *supra,* the Defendant City granted religious exemptions to each of the Plaintiffs. By doing so, the City placed each Plaintiff into a specifically defined class of protected individuals. That class is reasonably defined as: "employees requesting accommodation from the otherwise required vaccine, based on their religion, having been granted a religious exemption." That defined class of protected individuals was created by, and known to, the City–a material fact which cannot be disputed.

Once that class, defined by the Free Exercise of the religious beliefs of its members, was acknowledged by the Defendant City as a distinct religious class, each

---

This is not new evidence but documents which were in Defendants' possession at the time the decisions were made and at the time of their response to the instant motion. Plaintiffs have available the same declarations from all Plaintiffs but do not want to burden the docket with that material where the issue of sincerity is not subject to genuine dispute.

PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 8

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Suite 107, No. 393
Seattle, WA 98101
(206) 799-4221

Plaintiff was entitled to protection under the Free Exercise clauses of the United States Constitution and the Washington Constitution.[7] The Ninth Circuit has so decreed as the law of **this** case:

> The distinction between firefighters from within the County [sic] and those from without in no way aligns with or promotes the stated interest of the Proclamation. The existence of an exemption on that basis is therefore sufficient to trigger strict scrutiny. *Bacon* at 752.

Defendants argue that they are allowed to revisit their granting of religious exemptions to each of the Plaintiffs, but they rely on WLAD and Title VII cases in support. The Ninth Circuit made clear that this case must be addressed under a Free Exercise analysis, not an undue hardship claim, in which religious sincerity has a different framework. *See Bacon,* 104 F.4th at 751-53. For example, Defendants cite *Bartholomew v. Washington,* 725 F. Supp. 3d 1225, 1232 (W.D. Wash 2024) to claim they can revisit the granting of the religious exemption despite having granted it

---

[7] Sincerity cannot cure unequal treatment. Once secular activity is permitted for the identical risk and activity prohibited religious objectors, Plaintiffs should have been permitted the same activity, even regardless of sincerity, which they clearly were not. Religious activity must receive comparable treatment. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 17 (2020). Plaintiffs should have been allowed to do that which secular individuals were allowed to do, unless strict scrutiny is satisfied.

previously. But *Bartholomew* is a *pleading* case under Title VII/WLAD, not a Free Exercise challenge. The case was also dismissed on a 12(b)(6) for a *pleading failure* in which Plaintiff did not sufficiently plead a conflict with the COVID-19 vaccine. This is completely inapposite, as are the remainder cases Defendants cite, all of which are Title VII and/or WLAD cases, not Free Exercise.

Independently, at no time after grants of Religious Exemption did the City give notice that religious sincerity was a "cause" for termination of any Plaintiff.[8] Those Plaintiffs were tenured under Section 55 of the City Charter, and could only be terminated for cause, and had due process rights under *Loudermill*, 470 U.S. 532, 105 S. Ct. 1487 (1985) and *Danielson v. Seattle*, 108 Wash.2d 788, 798 (1987). *See* Woodward Dep. 56:12-18. Because they were denied due process on the issue of religious sincerity in 2021, termination cannot be justified on a lack of religious sincerity after the fact.

---

[8] *See* Plaintiff Declaration, identified in n.6, in which Plaintiffs testify that the sincerity of their religious belief was never questioned after they received affirmative statements that their religious exemption had been granted, including at their *Loudermill* hearing, in which Defendants' only discussion was the inability to accommodate.

To the contrary, the Defendants after-the-fact change of position to now attack religious sincerity, is direct evidence of religious discrimination. *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846 (4th Cir. 2001). And, in all events, there is no dispute that the Plaintiffs were willing to sacrifice their careers, and not use illegitimate vaccine cards, for their religious beliefs, no reasonable jury could find them other than sincere.

**C.    There Can Be No Dispute That Surrounding Fire Departments Accommodated Religiously Exempt Firefighters.**

Plaintiffs' declarations establish beyond doubt that the Neighboring Fire Departments accommodated religiously exempt firefighters, including Plaintiff firefighters terminated by the City of Spokane. *See* ECF 135; Brianne Dean Decl. Ex. A; ECF 135; ECF 140; ECF 137; ECF 134. See also ECF 56 ¶4-7. In addition to *Bacon*, there is controlling Ninth Circuit authority, not cited by Defendants, regarding the importance of that evidence regarding a Free Exercise claim:

> [W] have found comparisons between institutions analytically useful when considering whether the government is employing the least restrictive means. **Indeed, the failure of a defendant to explain why another institution with the same compelling interests was able to accommodate the same religious practices may constitute a failure to establish that the defendant was using the least restrictive means.**

*Warsoldier v. Woodford*, 418 F.3d 989, 999 (9th Cir. 2005) (emphasis added).

Defendants make no attempt to explain why other jurisdictions were able to meet the same compelling COVID-19 related interest while accommodating

unvaccinated firefighters but Defendants were not. They do not even address the issue, placed squarely before them by the Ninth Circuit in Bacon.9

A Defendant "cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Shakur*, 514 F.3d at 890.

The Ninth Circuit recognized "at least three less restrictive ways that "[t]he Mayor, the Fire Chief and the City could accomplish its same compelling purpose," including to "do [] what all surrounding fire departments are doing – testing and masking…take temperatures and continue to social distance. And they could consider natural immunity." *Bacon* at 752-53. The Defendants have not provided any evidence to meet their burden of proof, and their conclusory statements to the contrary are of no avail: "[c]onclusory affidavits that do not affirmatively show personal knowledge of specific facts are insufficient." *Casey v. Lewis,* 4 F.3d 1516, 1527 (9th Cir. 1993). Defendants' Response makes no mention of any of Plaintiffs' declarations establishing underinclusiveness. "If the nonmovant does not "specifically [controvert

---

9 *See* Woodward Dep. at 28:14-25; 33-34:25-6; 42-43:16-4; 80:5-22; 82-84:20-4 (no recollection of any discussions with other city Mayors, hospitals or even the Spokane P.D. regarding ability to accommodate.)

duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." *Beard v. Banks,* 548 U.S. 521, 527, 126 S. Ct. 2572, 165 L. Ed. 2d 697 (2006).

### 1. Defendants Falsely Claim That They "Required" Surrounding Fire Districts and Private Contractors to Comply with the Mandate.

Defendants' repeated, but false, refrain is that they "required" neighboring fire departments to "ensure" only vaccinated firefighters responded under Auto Aid calls into the City of Spokane; ECF 155 at 16:15; 21:8; 22. This is false' neighboring fire departments never agreed to what Defendants categorize as "required." The Defendants took no reasonable or meaningful steps to "ensure" that only vaccinated firefighters would enter the City, Woodward Dep. at 31:14-18; 33:7-15; 36-37:13-15; 39-40:22-16; 60:8-14; 81-82:19-19, and did not even do a study regarding the risk of that event. *Id.*, 119-20:25-4. Even Defendants' Response brief and declaratory submissions state that, at best, neighboring fire departments only said they would use "best efforts," ECF 155 at 20:9; ECF 158, Ex. 1 at 6; ECF 161 at ¶ 48, an assertion not monitored by the Defendants with no evidence of follow-up. *See, e.g.,* Woodward Dep. at 81-82:24-19 (no knowledge of anything done by the City or Defendant

ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street, Suite 107, No. 393
Seattle, WA 98101
(206) 799-4221

Schaeffer to ensure no unvaccinated firefighters were responding to calls in the City).[10]

Contrary to Defendants' assertions of a "requirement," Defendants admit AMR only had to "use reasonable efforts" to not use unvaccinated personnel. ECF 155 at 19:17. AMR clearly stated it would "suffer a dire impact in our ability to continue to service this contract" if the City enforced a prohibition against the use of its 38 unvaccinated employees; a polite way of saying they wouldn't comply. ECF 138, Exs. F and G. The neighboring fire departments "refused" a blanket restriction ECF 137; ECF 138, Ex. A; *see also* 2nd Cates' Decl. ¶¶ 10, 14-15,[11] and Defendants

_____

[10] Again, this is not new evidence, but directly contradicts the position taken on Response, and, as the Mayor's own testimony, was squarely within the non-movant's knowledge at the time of their Response.

[11] This declaration, too, is not "new evidence" but is offered in rebuttal to ECF 161 ¶42 in which Defendants claim that because Chief Cates stated that station "99 was 100% vaccinated," then no unvaccinated would be dispatched into the City. Engine 99 from Station 99 was only one engine of many in D-9, and those unvaccinated from D-9 were never prohibited from entering the City, nor was there a roll call or accountability regarding the unvaccinated members of D-9 who did enter

admit this, ECF 155 at 19:2. This is not a genuine dispute; it is a misrepresentation by Defendants in their opposition brief to obscure that which is clear in the record. And documents from AMR, ECF 138, Exs. F and G, prove the record: neighboring jurisdictions never agreed to the Defendants' requested restriction, and testimony from numerous firefighters from neighboring departments confirm they were never impeded or restricted in their movements into the City working alongside Defendants' firefighters. ECF 136; ECF 135; ECF 137; ECF 140; ECF 142. *See also* 2nd Cates' Decl., n.10, *supra.* Defendants' Response Brief is silent on these uncontroverted declarations, despite the Defendants' burden of proof.

Further, Plaintiff Isaiah Dean, hired by District 9 (D-9) following his termination, was dispatched by CAD unvaccinated into the City more than 150 times during the mandate, per PRA documents. ECF 135; Brianne Dean Decl., Ex. A,[12] the City, including unvaccinated D-9 firefighter Andrew Hoogstad, who was stationed in the City from Station 99.

[12] Although Brianne Dean's declaration and PRA installment documents were not included in Plaintiffs' Motion, material presented in a Reply brief is not considered "new" if it directly responds to arguments or evidence raised in the opposing party's motion for summary judgment brief. *Zkey Invs., LLC v. Facebook*

PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 15

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Suite 107, No. 393
Seattle, WA  98101
(206) 799-4221

Even as to AMR, Defendants state they sent a letter to AMR "requiring its compliance with the Vaccine Proclamation," ECF 161 at ¶51, but acknowledging that AMR admitted it intended to use unvaccinated EMT's in their business practice because "their other customers and hospitals (other than the City of Spokane), were not requiring vaccinations for their employees requesting an exemption," *id.* at 52. This admission underscores the internal inconsistency of the Defendants' position that they could not adopt those same measures while still satisfying the Proclamation, while admitting everyone else did. It fully exposes their misrepresentation that they "required" compliance with their mandate that neighboring jurisdictions use only the

---

*Inc.,* 225 F. Supp. 3d 1147 (N.D. Ca. 2016). *See also Rayon-Terrell v. Contra Costa County,* 232 F. App'x. 626 n.2 (9th Cir. 2007) (reply brief addressed same facts supplied in opposition but "provides the full context to [opposition party's] selected recitation of facts"). Defendants had access to these same statistics but withheld them, then misled this Court by denying the truth cited therein. Additionally, Plaintiff Joe Howarth, also hired by D9 following his termination, was also dispatched to the City numerous times, ECF 136 ¶9-17, and estimates he entered the City more than 200 times to respond to medical or fire emergencies. He has submitted a PRA request for those runs, which has not yet been produced. *Id.* at ¶14.

vaccinated when entering the City, when clearly, AMR and the neighboring departments were not agreeing to, or following, that "requirement."

Chief Schaeffer unwittingly admitted that the CAD system automatically dispatched firefighters, and this dispatch was based on location, emergency needs, and other time crucial issues. "It was CAD, and not the City dispatchers, who determined those assets that could respond in accordance with Automatic Aid Response Agreements." ECF 161 at 10, ¶31. Vaccination status was *not* part of CAD considerations, and Defendants took no steps to make it so, Woodward Dep. 61:8-20; 93:10-17; 98:12-15; *see also* ECF 161 ¶ 34 (Woodward and Schaeffer admit CAD operated throughout COVID the same way it did prior to COVID). CAD did not have any access to who was vaccinated and who was not and Defendants do not so allege. CAD did not, and could not, consider vaccination status, as unvaccinated firefighters dispatched to the City hundreds of times attest. ECF 135; Brianne Dean Decl., *see* n.10; ECF 136, ECF 142; ECF 140; ECF 137. Defendants clearly had knowledge of dispatched unvaccinated firefighters. ECF 141 ¶13; ECF 137; ECF 136 ¶15; ECF 135 ¶11.

In fact, CAD documents obtained by Plaintiffs show more than 3,700 dispatches into the City of neighboring fire districts with accommodated and unvaccinated firefighters, disputing Schaeffer's claims. Third Decl. of Marlin

PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 17

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Suite 107, No. 393
Seattle, WA  98101
(206) 799-4221

Thorman[13]. This is only a partial pull. *Id.* Defendants' Response declares that CAD was responsible, yet, the City continued to utilize CAD knowing it was dispatching the same as it always had. Defendants had full access to its own data confirming the frequency and extent of these dispatches. This omission renders the Defendants' submission a misrepresentation to the Court.

Defendants claim they did not use Automatic Aid Response Agreements to supplement or replace their terminated, unvaccinated work force. ECF 155 at 22:18-21. That is doubtful, but irrelevant to the undisputed fact that Defendants allowed unvaccinated firefighters into the City, a policy of underinclusiveness that undermines any stated assertion that terminating Plaintiffs was the only and narrowly tailored means for the City to accomplish its alleged compelling interest to stop the spread of the virus.

Defendants claim that they "applied the Proclamation to its employees the same way it applied the Proclamation to its contractors;" ECF 155 at 22:7-9, which is

---

[13] *See* n.10, *supra,* in which the Ninth Circuit does not prohibit using new documents in a Reply brief that directly responds to arguments or evidence raised in the opposing party's brief. Defendants' argument seemingly raises a "CAD defense" to underinclusiveness but withheld the very documents disproving that assertion.

PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 18

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Suite 107, No. 393
Seattle, WA  98101
(206) 799-4221

a false conclusion without evidence, as shown by AMR's correspondence with Chief Schaeffer, ECF 138, Exs. F & G, and ECF 137. Religious objectors were subject to an absolute mandate, while contractors who self-attested as to compliance with the Proclamation to include permitting religious accommodations, were knowingly allowed into Spokane unvaccinated by automatic dispatch through CAD, or otherwise. Defendants knew this was happening, ECF 137 ¶12; 136 ¶¶ 11-17; 135 ¶¶9-16; 141 ¶¶12-13, and permitted it "as applied." *See also* Brianne Dean Decl.

**2.      Defendants are Silent on the Issue of Sloppy Chain of Custody and Control of Vaccine Cards and Defendants' Failure to Confirm Secular Firefighters were Fully Vaccinated.**

Further establishing the underinclusiveness of Defendants' discriminatory policy, evidence which Defendants likewise did not address at all in their opposition, was the establishment of control issues of blank vaccine cards that were able to be used fraudulently by secular firefighters, to the blind eye of Defendants. *See* ECF 148, ECF 149.  Defendants also did not provide any controverting evidence that they failed to verify both vaccinations of the two series regimen, leaving some secular firefighters not fully vaccinated. ECF 147. *See Beard, supra,* 548 U.S. at 527 (uncontroverted evidence deemed admitted). The circumstantial evidence of the Defendants looking the other way, just as they did in blaming CAD for doing that which CAD was

programmed to do, is additive to the underinclusive character of their approach to the termination of Plaintiffs.

**D.    Qualified Immunity is Not a Defense for Individual Defendants.**

A city is liable when a policy, practice or decision by a final policy maker causes the constitutional violation. *Monell v. Department of Social Services,* 532 F.2d 259 (1976). The Court held that municipalities are "persons" within the meaning of 42 U.S.C. § 1983 and no qualified immunity shield exists for the municipality.

An individual Defendant enjoys qualified immunity from suit under § 1983 unless their conduct violates clearly established law.  That said, it has been the law of the land for more than 30 years that a government cannot prohibit religious conduct of an exact nature that is allowed by secular employees. *See Church of Lukumi Babalu Aye v. City of Hialeah,* 508 U.S. 520 (1993). *See also Cantwell v. Conn.,* 310 U.S. 296 (1940) (laying out foundational principles for the Free Exercise Clause).  No reasonable official could believe it is lawful to engage in a 30-year history of Supreme Court precedent prohibiting underinclusiveness under Free Exercise, to wit, to exclude religious objectors while permitting unvaccinated secular actors to perform the same work and present the same risk prohibited by those in a protected class, such as Plaintiffs. Behavior that "pursues the city's governmental interests only against conduct motivated by religious believers…[is the] precise evil [that] the requirement

**ARNOLD JACOBOWITZ & ALVARADO PLLC**
720 Seneca Street, Suite 107, No. 393
Seattle, WA  98101
(206) 799-4221

of general applicability is designed to prevent." *Church,* at 545-46. This law has been clearly established for more than 30 years.

### III.    CONCLUSION

The Plaintiffs respectfully requests that the Court grant Plaintiffs' Motion for Summary Judgement based on a violation of Plaintiffs' Free Exercise claims and allow the case to proceed to trial on damages.

DATED this 1st day of April 2026.


ARNOLD JACOBOWITZ & ALVARADO PLLC


*s/ Nathan J. Arnold*
NATHAN J. ARNOLD, WSBA No. 45356
*Attorney for Plaintiffs*
R. BRUCE JOHNSTON, WSBA No. 4646
*Of Counsel*
720 Seneca Street, Suite 107, No. 393
Seattle, WA 98101
(206) 799-4221
Nathan@ajalawyers.com
Bruce@rbrucejohnston.com

# ATTACHMENT A

## UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

LEONARD R. MEAGHER II,

     Plaintiff,

   v.

KING COUNTY, *et al.*,

     Defendants.

CASE NO. 2:23-cv-00741-RSL

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

  This matter comes before the Court on "King County's Motion for Summary Judgment." Dkt. # 26. Plaintiff alleges that defendants failed to accommodate his religious beliefs in violation of Title VII, 42 U.S.C. § 2000e. Defendants argue that the claim fails as a matter of law because plaintiff's objections to the COVID-19 vaccine were not religious in nature and could not be accommodated without undue hardship.

  Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts

of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 2

## BACKGROUND

On August 10, 2021, the King County Executive issued an order requiring all County executive branch employees to be fully vaccinated against COVID-19 by October 18, 2021, unless they were entitled under law to an accommodation on account of disability or religious belief. Exec. Order No. ACO-8-27-EO (found at https://kingcounty.gov/en/search).[1] At the time, plaintiff was employed as a Millwright with King County Metro Transit. On September 14, 2021, plaintiff claimed a religious exemption to the vaccination requirement and requested accommodation. Dkt. 30-1. He notified his employer that the injection of infant cell lines into his body would be a trespass against his deity and violated his religious belief that all life is sacred and unique. Dkt. 30-1 at 3 and 5.

Without determining whether plaintiff's request met the legal requirements of a bona fide religious belief, King County moved forward with the interactive accommodations process. Dkt. 30 at ¶¶ 18-21. Plaintiff declined to participate, arguing that the employer first had to approve his religious exemption before he would discuss possible accommodations. Dkt. 30 at ¶¶ 19-20. Nevertheless, defendants considered potential accommodations, including plaintiff's initial suggestion that he continue to perform his duties as before, but found that a reasonable accommodation that would allow plaintiff to safely perform the essential functions of his job was not available. Dkt. 30-5. Plaintiff's

---

[1] The Court takes judicial notice of the fact that the conduct of which plaintiff complains occurred during the COVID-19 pandemic and of the cited Executive Order. *Denis v. Ige*, 538 F. Supp. 3d 1063, 1068-69 (D. Haw. 2021) (taking judicial notice of public health statements and emergency proclamations published on the internet).

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 3

request for an accommodation was denied on December 17, 2021. He participated in a *Loudermill* hearing and provided additional options for accommodation, including social distancing, masking, weekly testing, etc., and noted that there would be little if any operational costs associated with some of these accommodations. Dkt. 30-6 at 3-4. His employment at King County was terminated on March 18, 2022. Dkt. 30-7.

## DISCUSSION

To allege a prima facie case of religious discrimination under a failure-to-accommodate theory, an employee must show that "(1) he had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer threatened him with or subjected him to discriminatory treatment, including discharge, because of his inability to fulfill the job requirements.*" Detwiler v. Mid-Columbia Med. Ctr*., 156 F.4th 886, 893 (9th Cir. 2025) (quoting *Heller v. EBB Auto Co*., 8 F.3rd 1433, 1438 (9th Cir. 1993) (internal alterations omitted)). Once a plaintiff has alleged a prima facie case of religious discrimination, the burden shifts to the employer to show "that it initiated good faith efforts to accommodate the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Lawson v. Washington*, 296 F.3d 799, 804 (9th Cir. 2002) (quoting *Heller*, 8 F.3d at 1438). "Undue hardship is shown when a burden is substantial in the overall context of an employer's business." *Keene v. City and County of San Francisco*,  No. 24-1574, 2025 WL 341831, at *2 (9th Cir. Jan. 30, 2025). *See also Groff v. DeJoy*, 600 U.S. 447, 468 (2023).

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 4

**A. Bona Fide Religious Belief That Conflicts With Employment Duty**

Defendants argue that plaintiff's objections to the COVID-19 vaccination requirement were not based on any religious belief but rather on a misunderstanding of the science behind vaccine production. Contrary to plaintiff's espoused belief, the vaccines did not contain human fetal cells (or primate or canine cells, for that matter). Thus, the first question before the Court on this motion to dismiss is whether plaintiff has plausibly alleged that his objections to the COVID-19 vaccination mandate arose from his religious beliefs as opposed to his social/ philosophical/medical views and/or personal preferences. *See Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021) (citing the EEOC's guidance for the proposition that "an employee's request for an exemption from a COVID-19 vaccination mandate can be denied on the ground that the employee's belief is not truly religious in nature").

The Ninth Circuit has held that an objection based on assertions that the vaccine was derived in some way from aborted fetus cells and that plaintiff's faith opposed abortion, if sincerely held, can support a Title VII religious accommodation claim. *Keene v. City and County of San Francisco*, No. 22-16567, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023). Defendants argue that because the factual underpinnings of the objection reflect an incorrect understanding of vaccine science, the objection is not religious. There is little doubt, however, that the objection was prompted by plaintiff's religious beliefs as applied to his understanding of the facts. Whether a belief is religious or secular does not "turn upon a judicial perception of the particular belief or practice in questions: religious

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 5

beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit" protection. *Detwiler*, 156 F.4th at 894 (quoting *Thomas v. Review Bd.,* 450 U.S 707, 714 (1981), and citing *Bolden-Hardge v. Off. Of Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023)). Scientific truth is hardly the standard against which a religious belief is measured, and nothing in the record shows, as a matter of law, that plaintiff's assertion was not sincere, however misguided and/or factually unsupported. While defendants may be able to convince the jury that plaintiff's assertion of a religious belief was merely a convenient packaging for a fear of chimerism or some other secular aversion to vaccines, they are not entitled to summary judgment on the issue.

## B. Undue Hardship

Title VII requires that employers "reasonably accommodate . . . an employee's or prospective employee's religious observance or practice" unless the employer is "unable" to do so "without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). A "hardship is more severe than a mere burden" and the "modifier 'undue' means that the requisite burden, privation, or adversity must rise to an 'excessive' or 'unjustifiable' level." *Groff*, 600 U.S. at 469. To establish undue hardship, an employer "must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business," taking into account "all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating costs of an employer." *Id.* at 470 (internal citation, quotation marks, and alterations omitted).

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 6

In the context of COVID-19 vaccine accommodation cases, courts have found that non-economic costs, such as adverse impacts on an employer's mission and potential safety risks, are relevant factors to be considered. *Lavelle-Hayden v. Legacy Health*, 744 F.Supp.3d 1135, 1157-59 (D. Or. 2024); *Bordeaux v. Lions Gate Ent., Inc.*, 703 F. Supp.3d 1117, 1134–35 (C.D. Cal. 2023). *See also Groff*, 600 U.S. at 475-76 (J. Sotomayor, concurring) (non-COVID case acknowledging that "the conduct of the employer's business" includes the business' labor force, making deprivations and hardships imposed on co-workers relevant to the undue hardship analysis); *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 615 (9th Cir. 1988) (non-COVID case acknowledging spiritual costs). In addition, the reasonableness of an accommodation must be evaluated based on the knowledge and information available to the employer at the time the accommodation decision was made. *Efimoff v. Port of Seattle*, No. 2:23-CV-01307-BAT, 2024 WL 4765161, at *13 (W.D. Wash. Nov. 13, 2024); *Lavelle-Hayden*, 744 F.Supp.3d at 1150, 1152, 1158.

By the winter of 2021-2022, the Pacific Northwest had lived through two years of COVID-19 infections, and it was generally understood that the SARS-CoV-2 virus spread from person to person through aerosol transmission,[2] that infected persons could spread the virus before the onset of symptoms, and that older adults or those with certain underlying

---

[2] The relatively recent realization that the virus was transmitted through aerosol rather than droplets "implied that infections could occur over greater distances than previously thought, and in spaces that were previously inhabited by individuals with COVID-19. This mechanism explained cases and outbreaks of transmission spread over distance and over time versus direct, near contact." Dkt. # 28-1 at ¶ 68.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 7

medical conditions were at higher risk for developing a severe, potentially deadly, COVID-19 illness. Dkt. # 28-1 at ¶ 8.[3] After reviewing the job duties and surroundings of a King County Metro millwright, defendants' expert, Dr. Lynch concluded that the setting creates a risk for transmission of COVID-19, that the job duties require close proximity with multiple vehicle maintenance staff at various times throughout the day, and that these vehicle maintenance staff can then interact with vehicle operators and/or members of the public. Dkt. 28-1 at ¶¶ 84-86. Dr. Lynch opined that, "[g]iven Mr. Meagher's job duties, which entailed significant and regular interactions with other vehicle management staff, it is my opinion that, had King County allowed him to continue working as a millwright unvaccinated, it would have significantly increased the risk that he would infect other employees and members of the public with the virus or contract COVID-19 himself" and that masking, shields/barriers, social distancing, testing, hand washing, sanitizing spaces, etc. would not be adequate to mitigate that risk. Dkt. 28-1 at ¶¶ 90-91. Plaintiff does not dispute that an unvaccinated individual in a vehicle maintenance building poses a risk of transmitting COVID-19 to others in the facility.

Rather, plaintiff argues that defendants evaluated plaintiff's accommodation request under the wrong standard, that he had developed natural immunity from a previous

---

[3] Defendants produced the declaration and report of Dr. John B. Lynch, a board-certified infectious disease clinician, a Professor of Medicine at the University of Washington School of Medicine, and the Associate Medical Director at Harborview Medical Center. Dr. Lynch led UW Medicine's response to the COVID-19 pandemic from February 2020 to December 2023. Dkt. # 28-1 at ¶ 2. Plaintiff has not offered any medical or scientific evidence in response to this motion that would contradict Dr. Lynch's opinions.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 8

COVID-19 infection, and that masking and testing would have been reasonable accommodations for non-vaccinated employees based on EEOC guidance. Dkt. 33 at 6-8.

### 1. Standard for Evaluating Accommodation Options

In 2023, the Supreme Court held that "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business" to establish an undue hardship. *Groff*, 600 U.S. at 470. The employment decisions at issue in this case were made prior to the issuance of *Groff* and utilized earlier language suggesting that an undue hardship existed if an accommodation posed more than a de minimis cost. *See* Dkt. 34-1 at 10. The Court's analysis at this juncture turns not on the words defendants used in 2021 and 2022, but on whether defendants have shown that granting the accommodation would have posed substantial increased costs.

"Costs" that courts consider are not limited to financial expenditures; they also include non-monetary impacts such as an "accommodation's effect on co-workers" that "may have ramifications for the conduct of the employer's business," *Groff*, 600 U.S. at 472, as well as any "cost to an employer's mission," *Lavelle-Hayden*, 744 F. Supp. 3d at 1151. "[W]hen a proposed accommodation compromises safety in the workplace, this, too, can be an undue hardship." *Id*. at 1157 (citing *Kalsi v. N.Y.C. Transit Auth*., 62 F. Supp. 2d 745, 758 (E.D.N.Y. 1998), *aff'd*, 189 F.3d 461 (2d Cir. 1999)). Almost every court to consider the matter, including this one, agrees that an accommodation which poses a significant health or safety risk to co-workers or customers constitutes an undue hardship

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 9

for purposes of a failure-to-accommodate claim. *Hall v. Sheppard Pratt Health Sys., Inc.*, 155 F.4th 747, 754 (4th Cir. 2025); *Petersen v. Snohomish Reg'l Fire & Rescue*, 150 F.4th 1211, 1220 (9th Cir. 2025); *Savel v. MetroHealth Sys.*, No. 24-4025, 2025 WL 1826674, at *2 (6th Cir. July 2, 2025); *Rodrique v. Hearst Commc'ns, Inc.*, 126 F.4th 85 (1st Cir. 2025); *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021); *Carlson v. City of Redmond*, No. 2:22-CV-01739, 2025 WL 3496535, at *10 (W.D. Wash. Dec. 5, 2025); *Eshom v. King Cnty.*, No. 2:23-CV-00028-JNW, 2025 WL 3187479, at *9 (W.D. Wash. Nov. 14, 2025); *North v. Washington*, No. 3:23-CV-05552-TMC, 2025 WL 2721207, at *14 (W.D. Wash. Sept. 24, 2025); *Lisoski v. King Cnty.*, No. 2:23-CV-00536-RSL, 2025 WL 2511243, at *5 (W.D. Wash. Sept. 2, 2025) (collecting earlier cases). Even courts that deny motions for summary judgment on the issue recognize that accommodations which would increase the risk of COVID-19 infections pose an undue hardship: the sticking point in those cases is that defendants had not established as a matter of law that such risks would arise. *Shirley v. Washington State Dep't of Fish & Wildlife*, No. 3:23-CV-05077-DGE, 2025 WL 1374977, at *14 (W.D. Wash. May 9, 2025) (defendants failed to show that allowing plaintiffs to continue working unvaccinated "would have posed an undue hardship within the specific context of the workplace at [the Department of Fish & Wildlife] during the relevant time period."); *Strandquist v. Wash. State Dep't of Soc. & Health Servs.*, No. 3:23-CV-05071-TMC, 2024 WL 4645146, at *12 (W.D. Wash. Oct. 31, 2024), *reconsideration denied*, No. 3:23-CV-05071-TMC, 2024 WL 4979859 (W.D. Wash. Dec. 4, 2024) (no evidence that defendant evaluated the risks the

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 10

proposed accommodation posed or whether the accommodation would be cost-prohibitive); *Varkonyi v. United Launch Alliance, LLC*, No. 2:23-CV-00359-SB-MRW, 2024 WL 1677523 (C.D. Cal. Feb. 21, 2024) (finding that the lack of evidence regarding infection rates among defendant's employees now that the vast majority had complied with the vaccine mandate precluded judgment as a matter of law in defendant's favor). Plaintiff offers no evidence to dispute Dr. Lynch's opinion that an unvaccinated millwright would significantly increase the risk of COVID-19 infections for plaintiff, his co-workers, and even the transiting public, thereby posing an undue hardship on the employer.

In making this finding, the Court does not mean to suggest that the fact-specific inquiry regarding undue hardship in a COVID-19 vaccine case can be satisfied simply by pointing to a public health crisis and the scientific consensus that vaccination was the best way to reduce viral transmission and improve public health. After all, the vaccine mandate itself contemplated exemptions for religious and/or medical reasons. It is entirely possible that some Metro positions could be performed remotely or in such a way that an unvaccinated employee would not come in contact with and threaten the safety of defendants' employees or patrons. But in this case the relevant factors show that plaintiff could not perform the essential responsibilities of his job without posing just such a risk.[4]

---

[4] In light of this finding regarding the risks posed by Mr. Meagher in his specific position and with his specific job responsibilities, plaintiff's arguments regarding whether defendants could have accommodated a generic employee are unavailing.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 11

## 2. Natural Immunity

Plaintiff tested positive for COVID-19 in October 2020 and argues that he had therefore acquired natural immunity to the virus. The only evidence provided in support of this assertion is an undated one-page document with the Centers for Disease Control and Prevention logo at the top indicating that both natural and vaccine-induced immunity will trigger the immune system to produce antibodies if a person comes into contact with the same disease in the future. Dkt. 34-1 at 16. Plaintiff does not explain where this document came from or otherwise attempt to authenticate it. Regardless, the document does not mention or address the SARS-CoV-2 virus. By the time the Executive Order was issued and defendants were deciding whether they could accommodate an unvaccinated millwright, the variant with which plaintiff had been infected had been replaced by the Delta variant, which was again wreaking havoc on the medical system and the unvaccinated population. Dkt. 28 at ¶¶ 18 and 21-22. Dr. Lynch discusses studies that have found that vaccine-induced immune response are stronger than natural responses and last longer. Dkt. 28-1 at ¶¶ 32-34. All COVID-specific guidance on the matter recommended vaccination regardless of prior infection status. Dkt. 26 at 21-22. On the existing record, there is no genuine dispute that vaccination provided the single best means of preventing transmission of the virus, and there is no evidence that a year-old infection ameliorated the transmission risk posed by an unvaccinated millwright.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 12

### 3. Masking and Testing

The COVID-19 vaccines were released by different manufacturers and for different populations between December 2020 and January 2022. Dkt. # 28-1 at ¶¶ 15-17 and 25-28. The vaccines both decreased the risk of becoming infected and decreased the severity of the disease if infection occurred. Dkt. # 28-1 at ¶ 38. The strategies that had been used earlier in the pandemic, such as masking, testing, and social distancing, were insufficient to safeguard the population – leading to the urgent development of vaccines – and they proved ineffective at slowing the spread of the new Delta variant amongst the unvaccinated in the summer and fall of 2021.

> Hospitalizations in the state due to COVID-19 were at an all-time high in late August of 2021. At the time, unvaccinated individuals between the ages of 16 and 64 were 10 times more likely to be hospitalized than those who were vaccinated. In September of 2021, 95% of hospitalized patients were unvaccinated.

Dkt. # 28-1 at ¶ 58 (footnotes omitted). It was in this context that defendants were determining whether alternatives to vaccination would adequately protect their employees and patrons.

The only evidence in the record regarding the efficacy of masking and testing in preventing the spread of COVID-19 suggests that these practices are ineffective or at least substantially inferior to vaccines. Workplace outbreaks were still common in 2021. Dkt. 28-1 at ¶ 39. There are no studies showing that masks reduce infection and transmission in the workplace, and testing often fails to detect infection for a number of reasons. Dkt. # 28-1 at ¶¶ 39-44. The EEOC guidance plaintiff submitted in support of his assertion that

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 13

masking, social distancing, and testing are reasonable accommodation, does not refer to or discuss accommodations at all. Dkt. 34-1 at 18-19. In the absence of any evidence that personal protective equipment or testing, alone or in combination with other measures, would meaningfully reduce the risk of transmitting COVID-19, defendants' showing of undue hardship is uncontested.

For all of the foregoing reasons, defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiff. Defendants' motion to exclude the expert testimony of Ram Duriseti is DENIED as moot.

DATED this 13th day of March, 2026.

Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 14